**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**February 20, 2013**

# In the Court of Appeals of Georgia

A12A2027. JULIAN v. THE STATE.                                    DO-077 C

DOYLE, Presiding Judge.

Russell E. Julian appeals the denial of his motion for discharge and acquittal, arguing that the trial court erred by granting the State's motion for a mistrial, over his objection, based on the State's inability to secure the testimony of a prior difficulty witness. We agree and reverse.

The appellate standard of review of a grant or denial of a double jeopardy plea in bar is whether, after reviewing the trial court's oral and written rulings as a whole, the trial court's factual findings support its legal conclusion. [Q]uestions of law are reviewed de novo. Where the basis for the mistrial was the unavailability of critical prosecution

evidence, including the unavailability of prosecution witnesses, the strictest scrutiny is appropriate.[1]

The record shows that Julian was charged with seven counts of theft by taking.[2] The jury was seated and sworn on December 5, 2011. On December 6, 2011, before the trial commenced, defense counsel stated that the prosecutor had told him the previous night that one of its witnesses, Paul Ho, was not going to appear for trial, and defense counsel moved to exclude any hearsay testimony regarding Ho's statements.[3] The prosecutor responded that Ho lived in California and that the State was exploring the possibility of having him testify via Skype,[4] but that she had not yet determined whether she would be able to get Ho to agree. According to the prosecutor, defense counsel "did not have any problems" with Ho testifying via Skype, but the prosecutor stated that she "didn't plan on using anything [Ho] said in

---

[1] (Citations and punctuation omitted.) *Jackson v. State*, 305 Ga. App. 727, 727-728 (700 SE2d 714) (2010).

[2] OCGA § 16-8-2.

[3] Defense counsel stated that he previously thought that Ho would testify live at trial.

[4] Skype is an internet communication service that provides live, two-way audio and video communication. See *Tshiani v. Tshiani*, 208 Md.App. 43, 61, n.12 (56 A3d 311) (Md. 2012).

opening or in . . . any other way . . . until [she was] able to make sure that [he was] going to testify." Later that same day, during a break in the evidence, the State advised the trial court that the defense objected to Ho testifying via Skype. Then, following the close of testimony on December 6, defense counsel made an oral motion in limine to exclude Ho's testimony via Skype on the grounds that it would violate Julian's confrontation rights and would make it difficult to refresh the witness's recollection with documents. Defense counsel conceded that he told the prosecutor the previous night that he "had no problem" with Ho testifying via Skype, but that Julian objected when counsel consulted him. The trial court asked the State for the basis of Ho's testimony, and the prosecutor responded that Ho had a working relationship with Julian and that Ho was going to testify about prior difficulties. The prosecutor further explained that Ho had been served with a subpoena, but subsequently advised that "it would be a financial strain" for him to come to Georgia to testify live at trial. At the conclusion of the colloquy, the trial court stated that it was not adverse to the possibility of using Skype, but reserved final ruling pending a demonstration of the technology.

The next day, December 7, 2011, following an unreported conference in the trial court's chambers, the State moved for a mistrial. The trial court noted on the

3

record that the State advised that morning, presumably during the meeting in chambers, that "there is a rule regarding giving notice" before introducing testimony via live video-conferencing, and therefore it would not be possible for Ho to testify via Skype. The trial court requested specifics about when Ho was subpoenaed, and the prosecutor responded that on November 23, 2011, the State sent Ho a copy of the subpoena via email and facsimile, but failed to actually serve him. After Ho received the fax, he advised the State that he needed to consult with his attorney before committing to coming to Georgia. The week before trial, Ho's attorney told the prosecutor that Ho would not testify at trial because he was worried about possibly incriminating himself and that the State's subsequent offer of immunity did not change Ho's position. So, instead of "go[ing] through the whole procedure in getting him here and asking for a continuance," the State proceeded to trial on Monday and then, that afternoon, offered to allow Ho to testify via Skype; Ho agreed on the condition that the State grant him immunity. The prosecutor argued that it relied on defense counsel's assurances that he would not object to Ho's testimony via Skype and that the State introduced evidence that it could not "link up" without Ho, thereby prejudicing the State.

Defense counsel objected to the mistrial, explaining that his agreement to allow Ho to testify via Skype was conditional and that he would not have agreed if the State had disclosed Ho's refusal to testify live and concerns about self-incrimination. Counsel requested that the trial court instead instruct the jury to disregard any of the evidence related to the prior difficulty, noting that Ho's name was not mentioned during opening statements.

The trial court granted the State's motion for mistrial based on the State's proffer that Ho was "a witness that [was] important to their presentation." Thereafter, on January 4, 2012, the State filed a petition for certification of materiality of Ho as an out-of-state witness pursuant to former OCGA § 24-10-92 (a)[5] and a motion to grant Ho testimonial immunity, and the trial court granted both requests. Julian then filed a motion for discharge and acquittal, arguing that a second prosecution would violate his constitutional right against double jeopardy. The trial court denied the motion, and this appeal followed.

---

[5] OCGA § 24-10-92 was repealed by Ga. L. 2011, p. 100, §2, effective Jan. 1, 2013.

Once [a defendant's] jury [is] impaneled and sworn, jeopardy attache[s], and he [is] entitled to be acquitted or convicted by that jury. If a mistrial is declared without a defendant's consent or over his objection, the defendant may be retried only if there was a "manifest necessity" for the mistrial. . . . A manifest necessity to declare a mistrial may exist under urgent circumstances. . . . Because of the severe consequences of ordering a mistrial without the accused's consent, a trial court should give careful, deliberate, and studious consideration to whether the circumstances *demand a mistrial*, with a keen eye toward other, less drastic, alternatives, calling for a recess if necessary and feasible to guard against hasty mistakes.[6]

We give "great deference" to

a trial court's judgment about whether there was manifest necessity to grant a mistrial. . . . A trial judge has acted within his sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though in a strict, literal sense, the mistrial is not "necessary." This great deference means that the availability of another alternative does not without more render a mistrial order an abuse of sound discretion.[7]

---

[6] (Citation and punctuation omitted; emphasis supplied.) *Smith v. State*, 263 Ga. 782, 783 (1) (439 SE2d 483) (1994).

[7] (Citations and punctuation omitted.) *Tubbs v. State*, 276 Ga. 751, 754 (3) (583 SE2d 853) (2003).

Nonetheless, the State's failure to timely secure evidence required for a conviction "does not constitute such manifest necessity, because the Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."[8] As we have previously held,

> manifest necessity cannot be found where, as here, the mistrial results from the State's decision to proceed to trial without taking the necessary steps to secure the availability of its witnesses. Accordingly, when a prosecutor begins a case without sufficient evidence to convict, and the court grants mistrial [a] over the defendant's objection, a defendant's plea of former jeopardy should be sustained. . . . [T]his rule applies even in the absence of bad faith by the prosecutor.[9]

Here, the prosecutor proceeded to trial and allowed the jury to be sworn and impaneled despite having failed to subpoena Ho properly and despite knowing that

---

[8] (Citation and punctuation omitted.) *Jackson v. State*, 305 Ga. App. 727, 729 (700 SE2d 714) (2010).

[9] (Citations and punctuation omitted.) Id. at 729-730, citing *Arizona v. Washington*, 434 U. S. 497, 508, n. 24 (98 SC 824, 54 LE2d 717) (1978) (retrial barred if "a prosecutor proceeds to trial aware that key witnesses are not available to give testimony and a mistrial is later granted for that reason"); *Downum v. United States*, 372 U. S. 734, 735 (83 SC 1033, 10 LE2d 100) (1963) (retrial barred following mistrial after the State "allowed the jury to be selected and sworn even though one of its key witnesses was absent and had not been found").

7

Ho had refused to come to Georgia to testify live. The State's argument that it relied on defense counsel's agreement to allow Ho to testify via video conference is not persuasive. The prosecutor admitted that he did not even consider having Ho testify via Skype until the evening *after* the jury was sworn, at which time he approached defense counsel about that possibility, without first advising counsel that Ho was unwilling to testify live.[10] Defense counsel explained to the trial court that he would not have agreed to Ho testifying via Skype if he known that Ho was otherwise unwilling to testify. In its appellate brief, the State states that after the trial court expressed its willingness to allow Ho's testimony via Skype, the prosecutor "did further research on the issue [and] . . . determined that the use of video conferencing or testimony via Skype is a direct violation of [Julian's] right to confrontation." Thus, the State took a calculated risk by impaneling the jury without subpoenaing Ho and by mentioning the prior difficulty evidence to the jury before researching the implications of allowing the witness to testify via video-conferencing.[11] "In light of

---

[10] Compare *Ogletree v. State*, 300 Ga. App. 365, 368-369 (685 SE2d 351) (2009) (holding that second prosecution was not barred following the grant of the State's motion for mistrial because the witness did not become unavailable until after the jury was sworn).

[11] We do not reach the issue of whether permitting Ho to testify via video-conferencing would violate Julian's constitutional right to confront the witness.

8

the foregoing, we must conclude as a matter of law that the mistrial in this case, declared over [Julian's] objection, did not result from manifest necessity. The trial court therefore erred [by] denying [his] motion for discharge and acquittal."[12]

*Judgment reversed. Andrews, P. J. and Boggs, J., concur.*

---

[12] *Jackson*, 305 Ga. App. at 730.