COMMONWEALTH of Pennsylvania, Appellee

v.

**Ty M. LEVY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 24, 2013.

Filed Dec. 30, 2013.

Kyle W. Rude, Williamsport, for appellant.

Aaron S. Bùchle, Assistant District Attorney, Williamsport, for Commonwealth, appellee.

BEFORE: DONOHUE, J., WECHT, J., and COLVILLE, J.*

OPINION BY WECHT, J.

Ty M. Levy appeals from his November 27, 2012 judgment of sentence. After careful review, we affirm.

In its written opinion, the trial court set forth the pertinent procedural and factual history of this case as follows:

[Levy was] charged with two counts of Sexual Abuse of Children, five counts of Unlawful Contact with Minor, one count of Obscene and Other Sexual Materials, two counts of Corruption of Minors, one count of Indecent Exposure, and one count of Open Lewdness, in connection with certain communications he had with a fifteen-year-old girl over the computer.

A non-jury trial was held [on] June 18, 2012, at which time the Commonwealth withdrew Counts 4 (Unlawful Contact with [a] Minor), 10 (Corruption of Minors), 11 (Indecent Exposure) and 12 (Open Lewdness). The evidence was presented by stipulation: that [Levy] and the girl communicated via SKYPE whereby each could see the other during the conversation by way of a webcam, and that he encouraged the girl to expose herself and masturbate in front of the webcam (and that he did the same); also that each sent the other a "link" to a pornographic website. It was also stipulated that the SKYPE sessions were not recorded and that [Levy] did not have any images of the girl on his computer when it was examined by police.

"Opinion and Verdict" ("T.C.O."), 6/25/2012, at 1.

At trial, Levy vigorously argued that the evidence was insufficient to convict him of either sexual abuse of children, 18 Pa.C.S. § 6312(d), or subsection (a)(5) of the unlawful contact with a minor statute, 18 Pa.C.S. § 6318, because both crimes require proof beyond a reasonable doubt of the utilization of a "computer depiction" of a child for illicit purposes. Levy maintained that the use of Skype, an internet-based webchat service, was not a "computer depiction."

Additionally, Levy argued that the evidence was insufficient to convict him of obscene or other sexual material, 18 Pa. C.S. § 5903, or subsection (a)(4) of the unlawful contact with a minor statute, because those crimes require proof that the actor knowingly disseminated explicit materials to a minor. Levy argued that the email that he sent to the victim contained only a Uniform Resource Locator link

---

* Retired Senior Judge assigned to the Superior Court.

(hereinafter, "link") to explicit materials, and not the explicit materials themselves.

At the conclusion of the stipulated non-jury trial, the trial court rejected Levy's arguments, and found him guilty of two counts of sexual abuse of children, four counts of unlawful communication with a minor, one count of obscene and other sexual materials, and one count of corruption of minors (18 Pa.C.S. § 6301). On October 10, 2012, Levy was sentenced to an aggregate six-year term of intermediate punishment, which included sixteen months of incarceration in the Lycoming County jail.[1]

On October 17, 2012, the Commonwealth filed a motion for reconsideration of Levy's sentence, wherein the Commonwealth contended that Levy's sentence was too lenient. On November 1, 2012, the trial court granted the Commonwealth's motion to reconsider, and scheduled a second sentencing hearing for November 27, 2012. On that date, the trial court sentenced Levy to an aggregate term of thirty months to ten years' incarceration in a state prison.

On December 18, 2012, Levy filed a notice of appeal. In response, the trial court entered an order directing Levy to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 4, 2013, Levy timely filed a concise statement. In his statement, Levy again raised the statutory interpretation challenges that he raised during closing arguments at trial, as well as two challenges to his sentence. On January 23, 2013, pursuant to Pa.R.A.P. 1925(a), the trial court issued an opinion, wherein the court relied upon its discussion and rejection of Levy's statutory interpretation arguments that the court had

set forth in its June 2012 "opinion and verdict." Additionally, the trial court rejected Levy's challenges to his sentence.

Levy raises the following four issues for our consideration:

1. Whether streaming video, such as *Skype*, cannot be considered a computer depiction under 18 Pa.C.S.A. section 6312, sexual abuse of children, nor under section 6318(a)(5), unlawful contact with a minor?

2. Whether sending a computer link via email cannot be considered dissemination of sexually explicit materials to satisfy a conviction under 18 Pa. C.S.A. section 5903, obscene or other sexual material, nor under 18 Pa. C.S.A. section 6318, unlawful contact with a minor?

3. Whether the sentencing judge committed an abuse of discretion by granting the Commonwealth's motion to reconsider sentence?

4. Whether the sentencing judge committed an abuse of discretion by increasing [Levy's] minimum sentence from sixteen (16) months to thirty (30) months and his maximum from county intermediate punishment to state incarceration when no new or additional evidence was presented by the Commonwealth at the resentencing hearing?

Brief for Levy at 7.

■ In his first two issues, Levy presents two questions of statutory interpretation for this Court to resolve. Specifically, Levy maintains that the utilization of Skype with the victim did not amount to a "computer depiction" for the purposes of his convictions for sexual abuse of children

---

1. Levy also was evaluated for the purpose of determining whether he met the criteria for a sexually violent predator pursuant to Megan's Law. Levy did not meet those criteria, and no such designation was imposed upon him. *See generally* 42 Pa.C.S. § 9799.24.

and for unlawful contact with a minor. Levy then argues that sending the victim an email that contained a link to pornographic materials did not constitute the knowing dissemination of explicit materials to a minor for purposes of the crimes of obscene or other sexual material or unlawful contact with a minor. On their faces, Levy's arguments sound in statutory construction. Levy maintains that the facts, to which he stipulated, do not satisfy the terms of the relevant statutes as he would have us interpret them. Statutory construction of a term in a criminal statute frequently forms the underlying basis for a sufficiency challenge. *See generally Commonwealth v. Diodoro*, 601 Pa. 6, 970 A.2d 1100 (2009); *Commonwealth v. Velez*, 51 A.3d 260 (Pa.Super.2012). Accordingly, we consider Levy's first two arguments as challenges to the sufficiency of the evidence.[2]

■ We first set forth the basic principles that govern our resolution of Levy's first two claims, beginning with our standard of review for challenges to the sufficiency of the evidence:

> A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Williams*, 871 A.2d 254, 259 (Pa.Super.2005) (citations and quotation marks omitted).

■ Statutory interpretation also presents a question of law, as to which our standard of review is *de novo*. *Commonwealth v. Van Aulen*, 952 A.2d 1183, 1184 (Pa.Super.2008). "[A]s in all matters requiring statutory interpretation, we are guided by the principles of the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*" *Commonwealth v. Arroyo*, 991 A.2d 951, 955 (Pa.Super.2010) (quoting *Swords v. Harleysville Ins. Cos.*, 584 Pa. 382, 883 A.2d 562, 567 (2005)). The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly; when the words of a statute are free and clear from ambiguity, "the letter of the statute is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(a), (b).

■ It is axiomatic that the plain language of a statute is the best indication of

---

**2.** We note that Levy has not included in his brief a statement of the standard of review for a challenge to the sufficiency of the evidence, nor has Levy specifically styled his argument as such. Pennsylvania Rule of Appellate Procedure 2101 mandates that all briefs conform to our appellate rules of procedure, and provides this Court with discretion to quash or dismiss the appeal if the failure to conform to the rules is "substantial." *See* Pa.R.A.P. 2101. Despite these failures in form, Levy has presented to this Court a thorough and well-developed brief in support of his arguments. Thus, Levy's omissions do not impede our review. Accordingly, we do not find them to be "substantial," and we will not exercise our discretion to quash or dismiss his brief. *See also* Pa.R.A.P. 105 (rules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable).

the legislative intent that gave rise to the statute.

> Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

*Id.* § 1903(a). We also are mindful of the general presumption that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." *Id.* § 1922(1). Finally, the rule of lenity requires courts to strictly construe criminal statutes. *Id.* § 1928(b)(1). "Any doubt as to a criminal statute's meaning is to be resolved in favor of the defendant." *Velez,* 51 A.3d at 266–67 (citing *Commonwealth v. Graham,* 607 Pa. 580, 9 A.3d 196, 202 n. 13 (2010); *Commonwealth v. Greene,* 25 A.3d 359, 361 (Pa.Super.2011)).

 With these basic principles in mind, we turn to Levy's first specific challenge, beginning with the pertinent statutory language. Utilizing webcams and Skype, Levy and the victim each masturbated while the other was able to watch on a computer monitor. Based upon this behavior, Levy was convicted of sexual abuse of children and unlawful contact with a minor. The subsection of sexual abuse of children under which Levy was convicted provides, in pertinent part, as follows:

**(d) Child pornography.—**

(1) Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

18 Pa.C.S. § 6312(d). "Prohibited sexual act" is defined as "[s]exual intercourse ..., masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." 18 Pa.C.S. § 6312(g). Unlawful contact with a minor, in pertinent part, is defined as follows:

**(a) Offense defined.**—A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

\* \* \*

(5) Sexual abuse of children as defined in section 6312 (relating to sexual abuse of children).

18 Pa.C.S. § 6318(a)(5).

Clearly, a conviction for this particular subsection of the unlawful contact with a minor statute is dependent upon the elements of sexual abuse of children. Levy stipulated to the fact that the victim was under the age of eighteen and that the victim engaged in masturbation, an action specifically listed under the definition of a "prohibited sexual act." Thus, the only element being challenged is "computer depiction" as used in the sexual abuse of children statute. Levy steadfastly has maintained that Skype does not involve a computer depiction for purposes of this statute. For the reasons that follow, we disagree.

The General Assembly did not define the joint term "computer depiction" in the Crimes Code, nor has any Pennsylvania

Court had the opportunity to interpret this particular term. There is no dispute that Levy used a computer to communicate with the victim.[3] The problematic term is "depiction." In order to ascertain the common and approved usage of "depiction," we turn to the dictionary. Webster's Dictionary defines the verb "to depict" as "to show (someone or something) in a picture, painting photograph, etc.," or "to represent by or as if by a picture." Merriam–Webster (online dictionary), *available at* http://www.merriam-webster.com/dictionary/depiction (last reviewed Dec. 18, 2013). Notably, Webster's Dictionary provides, among others, the following exemplum for the term's usage: "The photograph *depicts* the two brothers standing in front of a store." *Id.* (emphasis in original). It follows that the noun "depiction" is the image that is portrayed or represented.

As aforementioned, our principle goal in this task is to discern and give effect to the General Assembly's intent by examining the common usage of the terms used in the statute. Thus, having set forth the common usage of "depiction," we must determine whether the use of Skype falls within its ambit.

"Skype is an internet communication service that provides live, two-way audio and video communication." *Julian v. State*, 319 Ga.App. 808, 738 S.E.2d 647, 649 n. 4 (2013) (citation omitted). Akin to the telephonic communication foreshadowed by Dick Tracy and the Jetsons, Skype permits individuals using webcams to see each other while conversing over the internet. During the live-streaming communication, the images recorded by a webcam appear on the other user's monitor screen. Any person within eyesight and earshot of the computer monitor can observe the participant's image and hear his or her words. In other words, Skype offers a program that permits a person to see and hear another person, who is in a different location, using a webcam and the internet.

When a person uses Skype, his or her computer monitor displays the video images of the other participant. We have little trouble concluding that such a display amounts to "showing" or "representing" an image as the common and approved usages of the term contemplates. We find the example attendant to Webster's definition of "depict" to be particularly instructive. In that example, the photograph "depicts" two brothers standing in front of a store. The common usage of the term includes a physical object, the photograph, displaying a real image. We find little difference between analogizing this common usage of the term to an image, live or still, appearing on a computer screen. A person who looks at the picture in the example will see two brothers standing in front of a store. That image is "depicted" to the viewer. There would be no difference if the person viewed that image in a photograph or on a computer screen. It follows then that Levy's computer "depicted" a fifteen-year-old girl masturbating. Thus, there is no question that images displayed on a computer screen "depict" their subject according to the common and approved usage of the term.

Moreover, this conclusion aligns with the General Assembly's intent in enacting the

---

3. A "computer" is defined in the unlawful contact with a minor statutes as:

[a]n electronic, magnetic, optical, hydraulic, organic, or other high-speed data processing device or system which performs logic, arithmetic or memory functions and includes all input, output, processing, storage, software of communication facilities which are connected or related to the device in a computer system or computer network.

18 Pa.C.S. § 6318(c).

sexual abuse of children statute, which our Supreme Court has explained was "plainly to protect children, end the abuse and exploitation of children, and eradicate the production and supply of child pornography." *Diodoro*, 970 A.2d at 1107 (citation omitted). To construe the term "depiction" as excluding images displayed on a computer monitor would circumvent, and confound, this legislative intent.

Levy maintains that the use of Skype is not a "computer depiction" because, *inter alia*, the other terms listed in section 6312, namely book, magazine, pamphlet, slide, photograph, film, and videotape, are all tangible objects that can be obtained, retrieved, or reproduced physically. Brief for Levy at 18–19. Levy argues that, because images transmitted within Skype are not tangible objects that can be obtained, retrieved, or reproduced like the other listed items, the General Assembly failed to encompass Skype and similar media within the parameters of the statute. This argument is unavailing, for the simple reason that the common and approved usage of the term "depiction" does not require the traits that Levy insists are inherent in the term. For example, the photograph of the two brothers in front of the store is a depiction, but not because a person can hold the photograph or because it can be obtained, retrieved, or reproduced. Rather, the photograph is a depiction because it displays a picture to the viewer, the same as a computer displays a picture to a person looking at the monitor.

Lastly, Levy looks to California and New York, and notes that both states' legislatures chose to utilize terms such as "live or recorded telephone messages," *see* Cal.P.C. § 288.2(a), "commercial online service," *see id.* § 288.2(b), or "computer communication system," *see* N.Y.P.L. § 235.22, to ensure that services such as Skype are criminalized when used for illicit purposes with minors. Levy maintains that, had Pennsylvania's General Assembly intended to include Skype within the definition of "computer depiction," it would have used terms such as those used by California and New York. Brief for Levy at 21–23.

Again, we are unpersuaded by Levy's logic. The fact that other states have chosen to use different or additional terminology, or have used more specific terminology, does not alter the fact that the live images portrayed on the screen during the use of Skype fall within the common and approved definition of "depiction," and thus within the ambit of our General Assembly's clear intent. Consequently, we are not persuaded that the actions taken by our sister states' legislatures are necessary to establish criminal culpability under the circumstances of this case.

For these reasons, we conclude that the images projected on a computer monitor by the use of Skype constitute "computer depictions" for the purposes of Levy's sexual abuse of children and unlawful contact with a minor (pursuant to subsection (a)(5)) convictions. As such, the evidence, as stipulated to by Levy, was sufficient to support these convictions.

■ In his second issue, Levy maintains that sending an email with a link to pornographic materials does not constitute the knowing dissemination of explicit sexual materials for the purposes of the crimes of obscene and other sexual materials and unlawful contact with a minor. Once again, we begin with the relevant statutory language.

The crime of obscene and other sexual materials provides, in pertinent part, as follows:

**(c) Dissemination to minors.**—No person shall knowingly disseminate by sale,

loan or otherwise explicit sexual materials to a minor.

18 Pa.C.S. § 5903. Unlawful contact with a minor states, in pertinent part, as follows:

(a) **Offense defined.**—A person commits an offense if he is intentionally in contact with a minor for the purposes of engaging in an activity prohibited under the following, and either the person initiating the contact or the person being contacted is within this Commonwealth: (4) obscene and other sexual materials and performances as defined in section 5903 (relating to obscene and other sexual materials and performances).

18 Pa.C.S. § 6318(a)(4).

The predicate for unlawful contact with a minor in this context is found in subsection (c) of the obscene and other sexual materials statute. Levy has stipulated that he knowingly sent an email to the victim that contained a link to pornographic materials. Thus, Levy does not challenge the scienter element of the crimes. Rather, Levy focuses his argument on whether the act of sending a link in an email constitutes the dissemination of "explicit sexual materials." According to Levy, "[t]he key to this determination lies within the definition of the word 'material.'" Brief for Levy at 25.[4,5]

Explicit sexual materials are defined in subsection 5903(c) as:

(1) any picture, photograph, drawing, sculpture, motion picture film, video tape or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors.

(2) any book, pamphlet, magazine, printed matter however reproduced, or sound recording which contains any matter enumerated in paragraph (1), or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct, or sadomasochistic abuse and which, taken as a whole, is harmful to minors.

18 Pa.C.S. § 5903(c)(1) and (2).

Levy maintains that a link does not fit within any of the items set forth in this definition. Indeed, Levy argues that a link, by itself, is more akin to the title of a book, movie, or magazine. Levy asks, "If an individual provides the title of a sexually explicit book and a minor subsequently takes the steps to locate the book at the

---

4. The term "disseminate" is not defined in this particular section of the Crimes Code. Levy notes this omission and offers a definition derived from Webster's Dictionary. *See* Brief for Levy at 24–25 ("To disseminate means to spread or send out freely or widely; and to foster general knowledge of, broadcast, or publicize."). However, Levy takes the argument no further. Instead, as noted above, Levy focuses his argument solely upon whether the link constitutes "material" under the statute. Thus, we need not concern ourselves with whether sending the email itself constitutes a dissemination for purposes of section 5903.

5. Levy relies in part upon the definition of "material" set forth in subsection 5903(b). That definition is inapplicable to the term

"material" as used in subsection (c). The definitions set forth in subsection (b) apply only to subsections (a) and (a.1). This is evidenced by the fact that the definitions precede subsection (c). Subsections (c) and (d) have their own definitions, set forth in subsection (e). It is clear that subsection (e) is meant to supply the applicable definitions for subsections (c) and (d) for two reasons. First, the subsection commences by stated that "as used in subsections (c) and (d)." Second, some of the definitions in subsection (e) overlap with those set forth in subsection (b). Thus, it is clear that the General Assembly intended for subsection (b) to supply the definitions for subsections (a) and (a.1) and for subsection (e) to supply the definitions for subsections (c) and (d) of (section 5903).

library and views its contents, is this dissemination of sexually explicit material so as to warrant charges under these sections?" Brief for Levy at 26. Levy argues that a link is a title or a name, but not the actual material as defined by the statute.

Levy's arguments have some merit. However, in construing a statute, even strictly under the rule of lenity, we must seek an interpretation that reflects the intent of our General Assembly. Moreover, we must not interpret a statute in a way that yields an absurd result. *See* 1 Pa.C.S. §§ 1921, 1922. Levy's arguments, although well-articulated and thought-provoking, would have us ignore the unmistakable function of a link to a website. All that the recipient must do to obtain the material being forwarded by the sender is click on the link. The material (*i.e.*, the photos, the videos, the text, etc.) then appears. The link provides easy—indeed, instantaneous—access to the material contained on the website.

That the recipient must take the cursory step of clicking on the link does not remove that link from the general definition of "explicit sexual material." We see no difference between sending a link to a website containing pornography and actually sending pornographic photographs as attachments to an email. One cannot reasonably argue that sending photographs as an attachment to an email is not the dissemination of explicit sexual material merely because one must click on the attachment to view the photographs. In a similar vein, we see no difference between clicking on the link for instantaneous access to the pornographic material and inserting a flash drive into a USB port, putting a VHS tape into a VCR, or taking a pornographic magazine out of its blacked-out plastic wrapper. These cursory steps that must be taken to actually view the pornographic content do not remove the items from the realm of explicit sexual materials. Neither does the simple step of clicking on a link to instantaneously access the materials, as the victim had to do in the present case. Hence, the link is more akin to those types of materials than the title of a book, Levy's protestations to the contrary notwithstanding.

To hold otherwise would frustrate the General Assembly's intent. The lawmakers clearly intended to protect children from the harms caused by the dissemination of pornographic materials, particularly by adults. Were we to interpret the term differently, predators easily could avoid criminal liability simply by sending children links to illicit materials, rather than sending the materials themselves. Surely, the General Assembly did not intend such an absurd result. Indeed, it is plain that the legislators intended just the opposite: to detect and punish offenders who attempt to expose children to pornographic materials. *See Diodoro, supra.*

For these reasons, we hold that an email containing a link to pornographic materials constitutes the dissemination of "explicit sexual materials" under 18 Pa.C.S. § 5903(c). Thus, the evidence was sufficient to support Levy's conviction under that section, as well as his conviction for unlawful contact with a minor based upon the same behavior.

In his final two issues, Levy argues that the trial court abused its discretion by (1) granting the Commonwealth's motion for reconsideration of Levy's sentence; and (2) imposing a much harsher sentence after granting the Commonwealth's motion. Beginning with the latter issue, Levy contends that the trial court abused its discretion by increasing his sentence when the Commonwealth presented no evidence that differed from that presented at the original sentencing hearing. The result, ac-

cording to Levy, was an excessive sentence that was not the result of a full consideration of Levy's character and the mitigating circumstances. As to his former issue, Levy asserts that the trial court abused its discretion in granting the Commonwealth's motion for reconsideration "for the precise reasons asserted" in support of his claim that his sentence is harsh and excessive. *See* Brief for Levy at 28.

 Levy's arguments challenge the discretionary aspects of his sentence. Appellant is not entitled as of right to a review of such a challenge. Our jurisdiction over a claim regarding the discretionary aspects of sentence must be established as follows:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

*Commonwealth v. Moury,* 992 A.2d 162, 170 (Pa.Super.2010) (internal quotation marks, citations, and modifications omitted). Levy has filed a timely notice of appeal and has included in his brief a Rule 2119(f) statement. However, Levy did not preserve his discretionary aspects of sentence challenges either at his second sentencing or in a post-sentence motion to reconsider his new sentence.

Levy initially was sentenced on October 10, 2012. One week later, the Commonwealth filed a motion to reconsider that sentence, which it believed to be too lenient based on the conduct for which Levy was convicted. On November 1, 2012, the trial court granted the Commonwealth's motion, and scheduled a second sentencing hearing. On November 27, 2012, the trial court re-sentenced Levy, in effect imposing a second judgment of sentence. Levy did not raise any of the arguments that he now presents to this Court regarding the trial court's exercise of its discretion in granting the Commonwealth's motion or in fashioning Levy's second sentence. Moreover, Levy did not file a post-sentence motion for reconsideration of the second judgment of sentence. Consequently, we must conclude that Levy has waived his challenges to the discretionary aspects of his sentence, and thus has failed to invoke our jurisdiction over such claims. *See Commonwealth v. Tirado,* 870 A.2d 362, 365 (Pa.Super.2005) (citation omitted) ("Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived."); Pa.R.A.P. 302(a).

Judgment of sentence affirmed.

COLVILLE, J. Concurs in the Result.