**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**September 16, 2015**

# In the Court of Appeals of Georgia

A15A1569. THE STATE v. STOCKHOFF.

PHIPPS, Presiding Judge.

Christian Stockhoff was indicted for violating the theft of trade secrets statute[1] and for computer theft.[2] During his jury trial, the judge sua sponte declared a mistrial and announced that he was recusing himself from the case. The judge later entered written orders declaring a mistrial, voluntarily recusing himself from the case, and requesting the clerk of court to reassign the case to another judge in the circuit. Stockhoff filed a plea of former jeopardy, which the newly-assigned judge granted. The state now appeals, contending that retrial was not barred by double jeopardy because: (1) Stockhoff had consented to the declaration of a mistrial; and (2) the trial

---

[1] See OCGA § 16-8-13.

[2] See OCGA § 16-9-93 (a).

judge had declared a mistrial based on a manifest necessity. Because the mistrial was not declared over Stockhoff's objection or without his consent, we reverse.

"The appellate standard of review of a grant or denial of a double jeopardy plea in bar is whether, after reviewing the trial court's oral and written rulings as a whole, the trial court's factual findings support its legal conclusion. Questions of law are reviewed de novo."[3]

The record shows the following. On the morning of November 10, 2014, before voir dire of the jury began, the prosecutor informed the trial court, "I only found out about this yesterday, but I guess there's some tangential familial relationship between the defendant and you or something." Stockhoff then stated that his ex-wife was the sister-in-law of the judge's brother; Stockhoff further stated to the judge, "I know your parents pretty well." The trial judge pertinently stated,

> I didn't know that until y'all told me that. I wouldn't have . . . ever made that connection without y'all telling me that. I don't recognize Mr. Stockhoff and I don't know that I've ever . . . . [I]f it's an issue – I don't want there to be a problem at any juncture in time, so if there's a problem, we need to address it now. If there's not a problem, then we can go forward, but I wouldn't have known that until y'all told me that.

---

[3] *Julian v. State*, 319 Ga. App. 808 (738 SE2d 647) (2013) (punctuation and footnote omitted).

Counsel for the state said, "it wasn't an issue for me"; counsel for Stockhoff said, "I'm fine with that." Both attorneys informed the judge that they were ready to go forward. After voir dire, the court recessed, and then reconvened on November 12, 2014.

On the morning of November 12, 2014, the judge heard argument on a motion in limine the state had filed. Thereafter, the jury entered the courtroom, and the judge administered the oath and gave preliminary instructions to the jury. The prosecutor gave his opening statement, during which he pertinently stated that when Stockhoff's business partner had "confronted [Stockhoff] about [the fact that Stockhoff was acting a little erratically at work], [Stockhoff] said it was because he was going through a divorce, he was doing some work purchasing a new house, stresses related to that."

During Stockhoff's opening statement, defense counsel stated that Stockhoff had "married a woman way after his divorce from the first . . . wife, thought things were going to be good. Well, she developed a drinking problem." The judge then abruptly stated, "Ladies and gentlemen, we're going to need to take up something outside of your presence. We'll be back with you as quickly as we can." The jury exited the courtroom, and the trial judge stated to counsel, "Okay, at this time I'm

going to declare a mistrial in this case and I recuse myself off this case. Okay. Thank y'all." The judge explained,

> You know, guys, this should have been brought up to me that you were going to be bringing this up before. You know, I didn't know anything about this situation before y'all brought it up to me, but I'm not going to sit here and have my sister-in-law's family brought into this case this way, and – . . . You could have . . . put up an opening statement, [defense counsel], without bringing this situation into it. That has nothing to do with this case.

Defense counsel replied, "That's not true, Judge, it does have something to do with this case." The following colloquy ensued.

> THE COURT: Well, then you should have brought it to my attention earlier.
> [DEFENSE COUNSEL]: Judge, I did not get into this case until after the time for recusal had long passed.
> THE COURT: It doesn't matter. I would have – if – if it was going to be something that was going to be involved in this case, I would have voluntarily stepped away from the case. But if that's going to be something that's involved in this case, I cannot sit on it.
> [DEFENSE COUNSEL]: It's – all I'm going to say is what – he's going to testify to maybe two or three sentences and the divorce, and that was it.
> THE COURT: Seriously?

4

[DEFENSE COUNSEL]: *Okay. All right. That's fine, Judge.*[4]

THE COURT: I mean, I'm willing to talk about it, but, you know, the whole recusal thing is kind of my choice, too.

[DEFENSE COUNSEL]: That's fine, Judge. You've declared a mistrial, you've recused yourself. We'll take it somewhere else.

THE COURT: Is there any reason I shouldn't, [Prosecutor]?

[PROSECUTOR]: I guess I'm a little bit in the dark about the whole background here.

THE COURT: Well, I don't know anything about it either until it comes up. I do know that my sister-in-law had a very difficult divorce, and I know that in many ways the family blames this man for . . . her problems. But it didn't seem like, to me, that that was going to have anything to do with this case. . . . But I had no – I mean, I thought it was something that we could pass through, but all of a sudden it's brought up in opening statements of a case. . . . [H]onestly, number one, I didn't recognize – I have never known the man's name who my sister-in-law's sister was married to. I've never known the name, have never recognized Mr. Stockhoff. It got brought up to me, didn't think it had anything to do with the case, and then all of a sudden it's brought up in opening statement. Apparently it's going to play a role in the case. It seems like that should have been brought to my attention.

[DEFENSE COUNSEL]: Judge, all I can tell you is I thought that had all been addressed prior to the time I got in the case. I mean, I don't – there are other lawyers in the case, the time under the rules say when you can raise it, and, you know.

---

[4] (Emphasis supplied.)

5

THE COURT: I understand. But it was obvious when we got together on Monday, that it hadn't been raised[.] . . .

[PROSECUTOR]: I think . . . the safer course is I think what the Court said, because I . . . don't want anyone, you know, looking back and saying that. You know, obviously it's clear from the Court's feelings that . . . .

THE COURT: I don't have any feelings about this whatsoever, because I don't . . . even know my sister-in-law that well. . . . [S]o that's neither here nor there, but it just seems like to me that it's going to become an issue in this case. I didn't think it was going to be an issue, I thought that we had addressed everything that we needed to address about it, but if it comes up in that manner, it seems like to me that it's going to be an issue. So I guess now is the time – I'm sorry, I overreacted earlier, but I just think that, you know, it was something that should have been brought into a little bit more about it. If people have thoughts, I guess – I, again, apologize, I kind of overreacted, but I just – I think there's a problem.

[DEFENSE COUNSEL]: *If the Court says – I trust the Court's judgment,*[5] I just don't want the Court to think I was trying to . . . pull something on the Court, because I wasn't.

THE COURT: I don't think you were trying to pull anything on the Court, on me at all. I just wish that . . . we'd had a little bit more of a discussion about it on Monday, because it –

[DEFENSE COUNSEL]: *I understand.*

---

[5] (Emphasis supplied.)

THE COURT: Okay. Well, unfortunately I think that that's what I've got to do. Thank y'all.

[DEFENSE COUNSEL]: Are you just going to release the jury?

THE COURT: I am.

[DEFENSE COUNSEL]: *Okay*.[6] Thank you, Judge.

"Once a defendant's jury is impaneled and sworn, jeopardy attaches, and he is entitled to be acquitted or convicted by that jury. If a mistrial is declared without a defendant's consent or over his objection, the defendant may be retried only if there was a 'manifest necessity' for the mistrial."[7] The newly-assigned judge granted Stockhoff's plea of former jeopardy, concluding that "there was no consent to the grant of a mistrial, either expressed or implied"; "there was no manifest necessity for declaring a mistrial"; and the trial judge abused his discretion, as "there [was] simply no evidence that the trial court considered any alternative to declaring a mistrial for what, essentially, was a benign statement concerning the expected evidence, that was in response to the State's opening statement."

---

[6] (Emphasis supplied.)

[7] *Julian*, supra at 810 (punctuation and footnote omitted).

7

The newly-assigned judge erred in concluding that Stockhoff had not consented to the grant of the mistrial. On appeal, Stockhoff argues that he was "faced with a *fait accompli*[8] when [the trial judge] stated, 'Okay, at this time I'm going to declare a mistrial in this case and I recuse myself off this case.'" Stockhoff posits that once the trial judge uttered those words, he was prohibited from acting "upon the merits of the matter"; "there was no opportunity for Defendant to object to such done deed"; and that therefore, "Stockhoff's objection, if one was required, would have been a nullity." We disagree with Stockhoff.

The trial judge had declared a mistrial outside the presence of the jury and before the jury was released; and the declaration of mistrial was followed by extensive discussion by counsel and the judge who said he was "willing to talk about it." The judge explained why he had not anticipated that any issue involving his former familial relation to Stockhoff would have arisen in Stockhoff's criminal trial; and the judge expressed his belief that "there's a problem" with his presiding over Stockhoff's criminal trial. During the discussion, there was ample opportunity for Stockhoff to object to the judge's declaration of a mistrial; the trial judge asked the

---

[8] The term *fait accompli* means "a deed accomplished." Black's Law Dictionary (10th ed. 2014).

8

state whether there was any reason he should not declare a mistrial and recuse from the case. The state posited that the judge's decision was the "safer course"; defense counsel opined that the time for the defense to have made a motion for recusal had "long passed," and the only concern expressed by defense counsel was about not wanting the trial judge to believe he was "trying to . . . pull something on the Court, because I wasn't."

At no point, from the time the judge announced that he was declaring a mistrial to the time the judge released the jury, did defense counsel object to the declaration of a mistrial. After the trial judge informed the attorneys that he could not "sit on" the case, defense counsel replied, "Okay. All right. That's fine, Judge," later indicating that he did "understand" the judge's reasoning for declaring a mistrial and recusing himself from the case, and stating that he "trust[ed] the Court's judgment." And although it was defense counsel who asked the judge whether he was "just going to release the jury," when the judge replied "I am," counsel did not object; he merely responded, "Okay. Thank you, Judge." Indeed, the record does not reflect that prior to the filing of the plea of former jeopardy counsel had ever objected to the court's declaration of a mistrial or recusal from the case. During his colloquy with the judge, defense counsel pertinently stated that the judge's sister-in-law's family situation

9

"had something to do with this case," and that he had thought "*that* had all been addressed"[9] by "other lawyers" who had previously represented Stockhoff.

"Consent to the grant of a mistrial can be express or implied. Although [Stockhoff] did not expressly consent to a mistrial, he impliedly consented by failing to object timely to the mistrial declaration."[10] "It is . . . obvious that the trial court labored under the impression that the defendant had in fact so agreed."[11] It follows that the newly-assigned judge thus erred in barring further prosecution of Stockhoff.[12]

For the foregoing reasons, the judgment granting Stockhoff's plea of former jeopardy is reversed. We need not address whether there was a manifest necessity for

---

[9] (Emphasis supplied.)

[10] *State v. Johnson*, 267 Ga. 305, 305-306 (477 SE2d 579) (1996) (citations omitted); *State v. Grayson*, __ Ga. App. __ (1) (__SE2d __) (Case No. A15A0408, decided July 8, 2015); see *Howell v. State*, 266 Ga. App. 480, 487-488 (3) (597 SE2d 546) (2004).

[11] *Burleson v. State*, 259 Ga. 498, 500 (384 SE2d 659) (1989).

[12] See *Johnson*, supra ("if a defendant consents to a mistrial, he may not thereafter utilize the mistrial as the basis of a plea of double jeopardy") (citation omitted); *Grayson*, supra; *Howell*, supra. Compare *McGee v. State*, 287 Ga. App. 839, 841-842 (1) (652 SE2d 822) (2007) (denial of motion for discharge and acquittal based on double jeopardy, reversed; mistrial had been declared over defense counsel's objection and there was no evidence that the trial court had considered any alternative to declaring a mistrial).

10

declaring a mistrial, or whether the trial court failed to consider any alternative to declaring a mistrial.[13]

*Judgment reversed. Doyle, C. J., and Boggs, J., concur*.

---

[13] See *Grayson*, supra ("*Pretermitting* whether reversal is required by the trial court's ruling that there was no 'manifest necessity' for the mistrial, the trial court committed reversible error by overlooking the fact that [the defendant] consented to the mistrial[.]") (emphasis supplied); *Smith v. State*, 263 Ga. 782, 783 (1) (439 SE2d 483) (1994) ("[a] manifest necessity to declare a mistrial may exist 'under urgent circumstances'. . . . Because of the severe consequences of ordering a mistrial without the accused's consent, a trial court should give careful, deliberate, and studious consideration to whether the circumstances demand a mistrial, with a keen eye toward other, less drastic, alternatives") (citations and punctuation omitted; emphasis supplied).