J-S31001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1342 EDA 2023 |

Appeal from the Order Entered May 1, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001196-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: G.A.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: P.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1343 EDA 2023 |

Appeal from the Decree Entered May 1, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000033-2023

BEFORE:  OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:　　　　　　　　　　**FILED NOVEMBER 3, 2023**

Appellant, P.M. ("Mother"), appeals from the decree and order entered on May 1, 2023, granting a petition filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate Mother's right to her son, G.M., a/k/a G.A.M. ("Child") pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b) and changing the goal of reunification to adoption.  We affirm.

We briefly summarize the facts and procedural history of this case as follows. In June 2020, DHS received a report that Mother, who was residing in a long-term residential drug and alcohol rehabilitation and mental health facility with Child who was 7 months old at the time, was under the influence of an unknown substance. In November 2020, DHS filed a dependency petition alleging that Mother was non-compliant with drug and mental health treatment and continued to abuse narcotics. On April 5, 2021, Child was adjudicated dependent, committed to DHS custody, and objectives for reunification were established. Initially, Child was placed with maternal grandmother, but he was moved into general foster care at the end of 2021. In May 2022, maternal relatives who were already foster parents, as well as parents to an adopted child, agreed to take Child. Child has lived there since that time. On January 31, 2023, DHS filed petitions to involuntarily terminate Mother's parental rights and change Child's permanency goal from reunification to adoption. An evidentiary hearing was held on March 31, 2023. Mother was present; however, the case was continued until May 1, 2023. On May 1, 2023, the trial court held the scheduled hearing. Mother was not present for the hearing but was represented by counsel. DHS presented testimony from Child's case manager with the Community Umbrella Agency ("CUA"), Gaelle Beck.

At the conclusion of the hearing, the trial court determined:

> The testimony reflects that [Child] has been in care since October of 2020. Single case plan objectives were established for reunification. They included [Achieving Reunification Center

("ARC") programs for] parenting, housing, and employment as well as substance abuse [and mental health] treatment [and] attending [Child's] medical appointments[.]

[T]he testimony does reflect that [M]other has engaged in drug treatment programs and has [participated in visitation with Child], thus there's been some compliance. There has not been enough for reunification[, however].

[Mother has] engaged in approximately seven [treatment] programs and did not complete [any] with the exception of February of 2023 [when] she was successfully discharged from Kirkbride [Center, a behavioral health care facility in Philadelphia] for the third time. The record reflects that she's in yet another program now.

There was no initial record of [Mother] visiting [Child] prior to treatment and the visitation that she's had – six to eight visits – has been inconsistent since [Child] was placed. Visits have not progressed beyond supervised.

Her compliance with single case plan objectives have been minimal as well as her progress has been minimal.

The testimony reflects that [Child] sees [Mother] as, according to the CUA case manager, a random person to hang out with. There's no mother/son bond. He never asks about her.

[The trial court finds Child] will suffer no irreparable harm if parental rights are terminated.

[Child's] been with his current foster family since May of 2022. He's bonded with his current foster parents who he refers to as mom and dad. The testimony reflects that he has a strong bond with them, and they attend to all of his needs.

The circumstances that led to placement will not be alleviated in a reasonable amount of time.

\*          \*          \*

[C]hild deserves permanency and it's in his best interest for the goal to be changed to adoption and parental rights terminated.

N.T., 5/1/2023, at 31-33.

Accordingly, the trial court entered a decree on May 1, 2023, finding clear and convincing evidence that supported grounds for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), (a)(8). The trial court further found that there was no bond between Child and Mother, there would be no irreparable harm to severing their relationship, and that it was in Child's best interest to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(b). In a separate order entered the same day, the trial court also changed Child's permanency goal from reunification to adoption.[1] These timely appeals resulted.[2]

On appeal, Appellant presents the following issues for our review:

A. Whether the trial [c]ourt erred by changing [] Child's goal to adoption and terminating parental rights of [] Mother[?]

---

[1] The trial court also entered decrees terminating the parental rights of A.S. ("Father"), as well as any unknown father ("Unknown Father"). Neither Father nor Unknown Father has appealed those determinations, and neither is a party to the current action.

[2] On May 30, 2023, Mother filed separate notices of appeal and a corresponding concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(ii). On June 8, 2023, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a). In that opinion, the trial court relied entirely upon the transcript from the evidentiary hearing, citing specific evidence presented, for its reasons to terminate Mother's parental rights and to change the goal from reunification to adoption. The trial court further stated that "[t]o the extent that the Pennsylvania Superior Court believes that the trial court's statements on the record do not adequately address any issues on appeal, the trial court will submit a supplemental opinion upon remand." Trial Court Opinion, 6/8/2023, at *1-2 (unpaginated). Finally, we note that by order entered on June 22, 2023, this Court consolidated the appeal from the termination of parental rights with the appeal from the goal change.

- 4 -

   B. Whether the trial court erred in terminating [Mother's] parental rights, the evidence having [b]een insufficient to establish M[other] caused [C]hild to be without essential parental care, nor could that not have been remedied[?]

   C. Whether the trial court erred in terminating [Mother's] parental rights, when M[other] felt that she was going to have sufficient time to complete her objectives[?]

   D. Whether the trial [c]ourt erred by finding that termination of [Mother's] rights best serves [] Child's developmental, physical and emotional needs and welfare[?]

   E. Whether the trial court erred in terminating [Mother's] parental rights, when M[other] wanted the opportunity to complete her objectives, and then effectively defend the [involuntary] termination of her parental rights[?]

   F. Whether the errors committed by the [trial] court [] deprived [Mother] of her rights to due [p]rocess and equal protection under the law[?]

Mother's Brief at 3-4 (suggested answers omitted).[3]

_____

[3]   Mother also states that she "respectfully request[s] to submit additional issues or errors in support of the within appeal [] after review of the transcript is competed."  Mother's Brief at 4.  However, Mother never sets forth additional issues.  Moreover, we note that although Mother presents six issues in her statement of questions involved, as set forth above, she argues all of her issues in a single argument.  *See* Pa.R.A.P. 2119(a) (requiring an appellant to divide the argument section into separate sections for each issue set forth in the statement of questions presented, with distinctive headings for each such section).  While we could deem Mother's issues waived, we will overlook the defect, but caution counsel to follow our rules of appellate procedure in the future.  *See Commonwealth v. Levy*, 83 A.3d 457, 461 n.2 (Pa. Super. 2013) (declining to find waiver where omissions did not impede review) *citing* Pa.R.A.P. 105(a) (providing that appellate rules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter).

From our review of Mother's brief, her appellate issues can be fairly separated into three distinct claims. First, Mother challenges the sufficiency of the evidence to support involuntary termination of her parental rights under Section 2511(a). Next, Mother argues that the trial court erred by severing the bond between her and Child under Section 2511(b). Finally, Mother argues that she was denied due process of law by the trial court's reliance upon pronouncements made at the evidentiary hearing and its failure to file a substantive Rule 1925(a) opinion because she "shouldn't have to guess the reasoning for the trial court's ruling." Mother's Brief at 13. We will examine each of these three contentions in turn. Finally, we note that although Mother references the goal change from reunification to adoption in her statement of questions in her appellate brief, she presents no legal argument or discussion regarding goal changes, and we find that aspect of her claim waived.[4]

_____

[4] As we previously determined:

> [I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. Citations to authorities must articulate the principles for which they are cited.
>
> This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.

*Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (internal citations omitted).

Regarding her first claim pertaining to Section 2511(a), Mother posits, in sum:

> The court erred in terminating Mother's parenting rights and determining that said termination would best serve the needs and welfare of [C]hild, when [] Mother was visiting [C]hild, was seeking housing for herself and [C]hild, attended parenting class, was working towards completing her family service plan objectives, completed a drug and alcohol and mental health programs and then actively participated and had housing at the Jefferson program, and did not intend to relinquish her claim to [C]hild or did not intend to refuse and/or fail to perform parental duties and, [] when Mother wanted [an] opportunity to complete her objectives, and then effectively defend the involuntary termination of her parental rights and when Mother felt she was going to have sufficient time to complete [her] objectives from the time she completed her drug and mental health programs.

Mother's Brief at 6.

We review involuntary termination orders for an abuse of discretion, which requires an error of law or a showing of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *See In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021) (citation omitted). In applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021); *see also In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021). "The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony." *In re Adoption of R.J.S.*, 901 A.2d 502, 506 (Pa. Super. 2006) (citations omitted). "In carrying out these responsibilities, the

trial court is free to believe all, part, or none of the evidence." *Id.* (citation omitted).

Pennsylvania's Adoption Act governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S.A. §§ 2101-2938. Section 2511(a) provides grounds for involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). *See In re Adoption of R.J.S.*, 901 A.2d at 509.

Here, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), and (a)(8), which provides, in pertinent part:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency

for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

***

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), and (a)(8). Furthermore, in this case, although the trial court found DHS met its burden of proof under each subsection referenced above, "we need only agree with its decision as to any one subsection in order to affirm the termination of parental rights." *In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa. 2018) (citation omitted).

We will examine Section 2511(a)(5). "To satisfy the requirements of Section 2511(a)(5), the moving party must produce clear and convincing evidence regarding the following elements: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to the child's removal or placement continue to exist; (3) the parent(s) cannot or will not remedy the conditions which led to removal or placement within a reasonable period time; (4) the services reasonably available to the parent(s) are unlikely to remedy the conditions which led to removal or placement within

a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child." **In re B.C.**, 36 A.3d 601, 607 (Pa. Super. 2012)(citation omitted). "The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit and have his parental rights terminated." **In re Z.P.**, 994 A.2d 1108, 1118 (Pa. Super. 2010) (internal citations and quotations omitted).

Moreover, this Court has stated:

The [trial] court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

The [Pennsylvania] Supreme Court has defined parental duty as follows:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, [our Supreme C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent exert [her]self to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith, interest, and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations and quotations omitted).

Here, there is no dispute that Child was removed from Mother's care for over three years. *See* Mother's Brief at 11 (Mother concedes that the one-year time limit set forth under Section 2511(a)(5) was "exceeded."). The trial court found that the conditions that led to Child's placement, namely Mother's substance abuse, continued to exist. The record supports that decision. CUA case manager, Gaelle Beck, testified that Mother had been engaged in seven different drug and alcohol treatment programs, over the course of the three years Child was removed from her care, but she was discharged from all of them without completion. *See* N.T., 5/1/2023, at 10. Mother finally completed treatment at Kirkbride Center on February 2, 2023, after the termination petition was filed. *Id.* At the time of the hearing, however, Mother had been admitted to and was attending another treatment program called "Fresh Start" at the "Family Center." *Id.* at 24. Additionally,

we note that Mother failed to attend Child's medical appointments, did not maintain contact with CUA throughout the life of the case as required, and refused parenting, housing, and employment programs through ARC. *Id.* at 7. Mother also did not participate in random drug screening as mandated. *Id.* at 8. Mother visited Child inconsistently both in person and virtually. *Id.* at 12. Mother only began visiting Child in person after she was released from Kirkbride Center in February 2023. *Id.* She only saw Child a total of six times since Child was removed from her care and those visits were always supervised. *Id.* at 12-13. The record shows that services were available to Mother, but she cannot or will not remedy the conditions which led to Child's removal within a reasonable period time. Moreover, while Mother believes she can comply given more time, her parental rights are not preserved by waiting for a more suitable or convenient time to perform her parental responsibilities while others provide Child with his physical and emotional needs. Finally, there was testimony that it was in Child's best interest to terminate Mother's rights. *Id.* at 14-15 and 19. Accordingly, we discern no abuse of discretion or error of law in terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(5).

Next, Mother asserts that the trial court erred by involuntarily terminating her parental rights pursuant to 23 Pa.C.S.A. § 2511(b). Mother's Brief at 11. On this issue, Mother argues, in sum:

> The circumstances of all dependency cases and the separation of parents from children disrupt [] the bond between parents and their children. Weekly visits, supervised visits, virtual visits, with

- 12 -

all the classes and therapy and seeking or maintaining housing and seeking or maintaining employment on top of limited visits make maintain[ing] a bond difficult. In this case Mother and [C]hild haven't been given the opportunity to properly bond with increased periods of visitation and more unsupervised visits, then overnight visits.

*Id.* at 12 (parentheticals omitted).

Section 2511(b) provides, in pertinent part:

**(b) Other considerations**.-- The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b). "Above all else ... adequate consideration must be given to the needs and welfare of the child. A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights."

*In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).

We previously explained,

Our Supreme Court has made clear that § 2511(b) requires the trial court to consider the nature and status of bond between a parent and child. To the extent there is a bond, the trial court must examine whether termination of parental rights will destroy a necessary and beneficial relationship, thereby causing a child to suffer extreme emotional consequences. While a parent's emotional bond with his or her child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. In determining needs and welfare, the court may properly consider the effect of the parent's conduct

- 13 -

upon the child and consider whether a parent is capable of providing for a child's safety and security or whether such needs can be better met by terminating a parent's parental rights.

Furthermore, our Supreme Court has stated [that] common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents.

[Our Supreme] Court [has] directed that, in weighing the bond considerations pursuant to § 2511(b), courts must keep the ticking clock of childhood ever in mind [because] children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail[,] the result, all too often, is catastrophically maladjusted children.

*Interest of M.E.*, 283 A.3d 820, 836–837 (Pa. Super. 2022) (internal citations, quotations, ellipses, and original brackets omitted). Further, we note that "[w]hen conducting a bonding analysis, the court is not required to use expert testimony. [Instead, s]ocial workers and caseworkers can offer evaluations as well." *In re Z.P.*, 994 A.2d at 1121 (citation omitted).

Here, initially we note that Mother concedes that she does not have a bond with Child and, instead, suggests that she be "given the opportunity to properly bond" with Child. Mother's Brief at 12. Moreover, as set forth above, the Child's case manager testified at the termination hearing and the trial court ultimately determined that Child considers Mother "a random person to hang out with," Child never asks about Mother, there was no bond between Mother and Child, and Child would not suffer irreparable harm if their relationship were severed. N.T., 5/1/2023, at 14. Child has been with his foster parents since May 2022, they attend to all of his needs, and Child is bonded to them and calls them mom and dad. *Id.* at 17-20.

- 14 -

Upon review, we discern no trial court abuse of discretion or error of law in involuntarily terminating Mother's parental rights under Section 2511(b). Here, the trial court examined the bond between Mother and Child and determined that termination would not destroy a necessary and beneficial relationship and that Child would not suffer extreme emotional consequences from severing that relationship. The trial court also considered intangibles, such as the love, comfort, security, stability, and the bond that Child has with his foster parents. There was ample evidence that the foster parents provide financial, educational, and emotional support for Child and that they are bonded. Mother's own feelings of love and affection for Child, alone, do not prevent termination of her parental rights. As such, Mother's second appellate issue lacks merit.

Finally, Mother argues that she was "deprived of her due process and equal protection under the law" by "making broad reference to the record, including witness testimony and exhibits presented." Mother's Brief at 13. Relying on the trial court's submission in its Rule 1925(a) opinion that if this Court "believes that the trial court's statements on the record do not adequately address any issue on appeal, the trial court will submit a supplemental opinion upon remand[,]" Mother argues that she "is unsure of the trial court's position" and that she "shouldn't have to guess the reasoning for the trial court's ruling." *Id.*

Pennsylvania Rule of Appellate Procedure 1925(a)(2), pertaining to children's fast track appeals, provides that "[u]pon receipt of the notice of

- 15 -

appeal and the concise statement of errors complained of on appeal required by Pa.R.A.P. 905(a)(2), the judge who entered the order giving rise to the notice of appeal, **if the reasons for the order do not already appear of record**, shall within 30 days file of record at least **a brief opinion** of the reasons for the order, or for the rulings or other errors complained of, **which may, but need not, refer to the transcript of the proceedings**." Pa.R.A.P. 1925(a)(2)(ii) (emphasis added). Moreover, our Supreme Court has stated "that the purpose of Rule 1925 is to facilitate appellate review and to provide the parties and the public with the legal basis for a judicial decision. If that basis is evident from the record, the trial court need not issue an opinion explaining it." ***Commonwealth v. Rogers***, 250 A.3d 1209, 1224 (Pa. 2021). In this case, as explained at length above, the basis for the trial court's decisions were evident from the record. The trial court also specifically referred to the transcript of the proceedings in its brief Rule 1925(a) opinion.[5] As such, Mother is not entitled to relief on her final claim.

For all of the foregoing reasons, it was proper for the trial court to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a) and (b).

---

[5] While the record is clear that termination was proper in this matter, the trial court's decision is certainly not the model of clarity. To facilitate our review, it would be beneficial for the trial court to set forth each subsection of Section 2511(a) as alleged in the termination petition and more methodically determine whether there was clear and convincing evidence to support or reject each basis for termination.

- 16 -

Decree and order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/03/2023</u>