J-S28002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUIS VELAZQUEZ | : | |
| | : | |
| Appellant | : | No. 239 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 4, 2023
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0001131-2022

BEFORE: STABILE, J., MURRAY, J., and LANE, J.

MEMORANDUM BY STABILE, J.:                    **FILED NOVEMBER 4, 2024**

Appellant, Luis Velazquez, appeals from the judgment of sentence imposed by the Court of Common Pleas of Montgomery County (trial court) on December 4, 2023, made final by the denial of his post-sentence motion on December 11, 2023. He challenges the sufficiency of the evidence to support his convictions of criminal conspiracy, possession of a controlled substance by an inmate and related offenses, as well as the discretionary aspects of his sentence. Upon review, we affirm.

"This case involves a conspiracy among members of the incarcerated population at the Montgomery County Correctional Facility ("MCCF") and their co-conspirators living on the outside." Trial Court Opinion, 2/27/24, at 3. In 2021, Detective Walter Kerr of the Montgomery County Detective Bureau was routinely monitoring co-defendant Mason Hall's telephone calls while he was

incarcerated at MCCF on an unrelated charge. N.T., Bench Trial, 8/3/23, at 13-14.

All inmate telephone calls at MCCF are recorded, except for attorney calls, per prison policy to ensure the safety of the prison itself. *Id.* at 15. At the beginning of such calls, a pre-recorded message advises both the inmate and the person being called that the call is recorded. *Id.* at 15-16. Detective Kerr was able to access the recorded calls on a web-based system and search for phone calls by inmate name, inmate personal identification number ("PIN"), or phone number called. *Id.* at 16.

Each MCCF inmate is assigned a PIN, which is entered every time a telephone call is made to a registered phone number. *Id.* at 17. Around December 2021, while monitoring Hall's calls, Detective Kerr heard a conversation between Hall and Patrick Perna, a co-defendant who resided in Norristown. *Id.* at 22. Hall and Perna discussed a $450-$500 investment, which "they would be able to double or triple . . . within 21 days." *Id.* Detective Kerr said that Hall became increasingly upset on the phone and asked about a letter which Perna sent to Hall, but was returned to Perna because it violated MCCF's mail policy. *Id.* This caught Detective Kerr's attention, and he started listening to additional calls between those individuals, ultimately uncovering a conspiracy to smuggle controlled substances into MCCF through the mail. *Id.* at 22-23, 25.

Detective Kerr's investigation expanded to include Appellant, who was housed with Hall in a maximum-security section of MCCF. *Id.* at 25-26.

Detective James Lavin of the Montgomery County Detective Bureau was assigned to assist Detective Kerr. *Id.* at 114. Detective Lavin listened to telephone calls between Appellant and Latisha Lucas, another co-defendant who resided in Norristown. *Id.* at 114-15. He opined that the telephone calls involving Appellant, Hall, Perna, and Lucas were part of the planning phase of "having the people on the outside coordinate a meeting so the contraband itself can be acquired" and sent by letter into the prison.[1] *Id.* at 116. Specifically, the plan was for Appellant and Hall to have a letter containing contraband sent by Perna into MCCF and earn a profit by selling the contraband to other inmates. *Id.* at 118-20.

At Hall's direction, Perna sent $450 to Appellant's girlfriend, Lucas, via Cash App. *Id.* at 47, 61-63. Perna met Lucas, who handed him a piece of "old, stained, kind of like brown" paper. *Id.* at 49, 77. Perna was instructed to write a letter on the paper and send it to Hall at MCCF. *Id.* He complied; however, the letter was returned by MCCF because it violated the prison's mail policy. *Id.* at 50, 83-84.

Based on the information obtained from the prison calls, detectives executed a search warrant on Perna's home. They recovered the contraband letter, as well as a letter written by Hall to Perna explaining the conspiracy in detail. *Id.* at 126-27. Cocaine, a Schedule II controlled substance, was identified on the contraband letter found in Perna's home. *Id.*

_____

[1] Detective Lavin was accepted as an expert in drug trafficking and drug jargon. *Id.* at 112.

- 3 -

Additionally, it was discovered that Appellant had previously instructed Lucas to mail him a piece of yellow construction paper that would be delivered to his home. *See id.*, Exhibit C8 (interview of Lucas). When it arrived, Lucas complied with Appellant's additional instruction to have her children draw on the paper and mail it to him at MCCF. *Id.* at 4. That letter was also returned by MCCF, and Lucas disposed of it. *Id.* Lucas became aware that the paper was soaked in contraband when Appellant was irritated that the letter did not arrive when he expected it to. *Id.* at 6, 8-9.

Appellant, Hall, Perna, and Lucas were all charged in connection with the conspiracy. Hall and Perna ultimately pleaded guilty, and Perna testified against Appellant and Lucas, who were tried together during the August 3, 2023, bench trial. Appellant was found guilty of (1) criminal attempt – possession of a controlled substance by an inmate; (2) conspiracy – possession of a controlled substance by an inmate; (3) solicitation – possession of a controlled substance by an inmate; (4) criminal attempt – manufacture, delivery, or possession with intent to manufacture or deliver ("PWID"); (5) conspiracy – PWID; (6) solicitation – PWID; (7) conspiracy – possession of a controlled substance; and (8) solicitation - possession of a controlled substance. He was sentenced to an aggregate prison term of six to 12 years. Appellant filed a post-sentence motion, which was denied. This timely appeal followed. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

On appeal, Appellant raises two issues for our review:

1. The trial court committed an error of law in finding [Appellant] guilty of the crimes charged based upon the fact that evidence introduced at trial was not legally sufficient to support the verdict because the evidence failed to establish each material element of the crimes charged and the commission thereof by [Appellant] beyond a reasonable doubt; including the charge of Criminal Attempt, Solicitation and Conspiracy. As the evidence introduced at trial did not establish that [Appellant] had the requisite *mens rea* for the crimes he was convicted.

2. The trial court committed an abuse of discretion by imposing an unduly harsh and excessive sentence when it gave [Appellant] consecutive sentences and failed to properly consider mitigating factors relating to [Appellant's] prior record score.

Appellant's Brief at 6.

Appellant first challenges the sufficiency of the evidence. Our standard of review is:

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-60 (Pa. Super. 2011) (*en banc*) (citations omitted).

"In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Freeman*, 128 A.3d 1231, 1248 (Pa. Super. 2015). "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.*

The sufficiency claim set forth above in Appellant's brief is identical to the issues enumerated in his 1925(b) statement. While Appellant contends that "the evidence failed to establish each material element of the crimes charged," he fails to specify which element or elements have not been sufficiently proven. At best, he suggests that the Commonwealth failed to prove the *mens rea* element of criminal attempt, solicitation and conspiracy. However, this suggestion is not enough to permit meaningful review; nor did Appellant develop the claims enough to avoid waiver.

Appellant's brief similarly lacks specificity. *See* Appellant's Brief at 11-13. His entire argument is set forth verbatim:

> [Appellant] is entitled to a judgment of acquittal based upon the fact that evidence introduced was not sufficient to support the verdict because the evidence failed to establish each material element of the crimes charged and the commission thereof by [Appellant] beyond a reasonable doubt and the trial court

- 6 -

committed an error of law and abuse of discretion in disregarding Appellant's character evidence.

* * * *

In order to prove the charges [Appellant] was convicted of the Commonwealth needed to present beyond a reasonable doubt that [Appellant] ha[d] the specific *mens rea* to commit the crimes of Conspiracy, Solicitation and Attempt to Contraband.  The trial court went through a detailed analysis of the testimony and evidence presented at trial.  The trial court record did not contain evidentiary objections, however, the Commonwealth failed to present actual sufficient evidence to establish [Appellant] presented the requisite *mens rea* to commit the crimes charged.  As such, the court's verdict is not supported by the record and the trial court committed an error of law and abuse of discretion in finding [Appellant] guilty.

*Id.* at 12-13 (cleaned up, citations omitted).  Appellant has neither provided references to the record specific to the challenged element or elements, nor developed the argument in a meaningful way.  *See* Pa.R.A.P. 2119(b), (c).  Simply put, Appellant's argument has impeded our appellate review to the extent that he has waived any challenge to the sufficiency of the evidence.  *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived"); *see also Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant.").

Even if the sufficiency claims were not waived, Appellant is not entitled to relief.  He contends that the Commonwealth failed to prove the *mens rea* element of criminal attempt, criminal conspiracy and solicitation.

"A person commits an attempt when, with **intent to commit a specific crime**, he does any act which constitutes a substantial step toward the commission of the crime." 18 Pa.C.S.A. § 901(a) (emphasis added). Therefore, "in the attempt setting, the *mens rea* level of "intentionally" attaches to the result[.]" ***Commonwealth v. Roebuck***, 32 A.3d 613, 622 (Pa. 2011). The results in question here are possession of contraband by an inmate[2], possession of a controlled substance by a person not registered[3], and PWID[4].

To sustain a conviction for conspiracy, the Commonwealth must prove beyond a reasonable doubt: (1) **an intent to commit** or aid in an unlawful act; (2) an agreement with a co-conspirator; and (3) an overt act in furtherance of the conspiracy. 18 Pa.C.S.A. § 903; ***see also Commonwealth v. Thomas***, 65 A.3d 939, 943 (Pa. Super. 2013) (citation omitted). "[T]he

_____

[2] It is unlawful for a prisoner or inmate to possess or have under his or her control any controlled substance in violation of section [780-113(a)(16)] of the Controlled Substance, Drug, Device and Cosmetic Act. **See** 18 Pa.C.S.A. § 5123(a.2).

[3] "Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act . . . unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act" is prohibited. 35 P.S. § 780-113(a)(16).

[4] "[T]he manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act . . . or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance" is a prohibited. 35 P.S. § 780-113(a)(30).

agreement must rest upon the mutual **specific intent to carry out a particular criminal objective**." ***Commonwealth v. Chambers***, 188 A.3d 400, 410 (Pa. 2018) (emphasis added).

"A person is guilty of solicitation to commit a crime if **with the intent of promoting or facilitating its commission** he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime[.]" 18 Pa.C.S.A. § 902(a) (emphasis added).

In all three instances, the *mens rea* required is the specific intent to commit the underlying offense. Thus, the Commonwealth was required to prove beyond a reasonable doubt that Appellant, as an inmate, had the specific intent to possess a controlled substance, as well as the intent to deliver it. A person acts intentionally with respect to a material element:

> (i)    If the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
>
> (ii)    If the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hope that they exist[.]

18 Pa.C.S.A. § 302(b)(1).

In the present case, there was ample evidence presented during the non-jury trial to prove that Appellant had the specific intent to possess a controlled substance as an inmate and to deliver it while in prison:

> Appellant and co-defendant Hall had the intent to get contraband into the jail with the assistance of co-defendants Lucas and Perna.

- 9 -

> Specifically as to Appellant, the record established that Appellant confirmed with co-defendant Hall the telephone number for Lucas to contact in order to set this plan of bringing contraband into the prison into motion; Appellant communicated Perna's name and telephone number to Lucas; Appellant gave Lucas directions to request $450.00 from Perna, which was paid by Perna to Lucas via CashApp; and Appellant told Lucas what to tell Perna to do with the letter in terms of mailing it back to the prison.

Trial Court Opinion, 2/27/24, at 14. We agree with the trial court's analysis. Furthermore, Hall sent Perna a letter outlining the conspiracy in detail, which was admitted into evidence. Accordingly, there was sufficient evidence to support the required *mens rea* for all of Appellant's convictions. No relief is due on this claim.

In Appellant's next claim, he challenges the discretionary aspects of his sentence. An appellant challenging the discretionary aspects of sentencing is not entitled to appellate review as a matter of right. ***Commonwealth v. Clemat***, 218 A.3d 944, 959 (Pa. Super. 2019). Rather, such challenges are considered petitions for allowance of appeal. ***Id.*** Thus, an appellant must invoke our jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. ***Id.*** Failure to satisfy all four parts of the test is fatal to the claim. ***See id.***

Here, Appellant filed a timely notice of appeal and properly preserved the sentencing issue in his post-sentence motion. However, Appellant failed to include a separate concise statement "immediately preced[ing] the argument" section in his brief. *See* Pa.R.A.P. 2119(f).[5] Rather, Appellant conflated his Rule 2119(f) statement with his argument section. The Commonwealth pointed out this defect and objected by stating that Appellant's claim should be waived on that ground. Commonwealth's Brief at 9-10. While we agree with the Commonwealth, we decline to find waiver because we can discern the basis of the claim despite the technical defects in Appellant's brief. *See* Pa.R.A.P. 2101; *see also Commonwealth v. Levy*, 83 A.3d 457, 461 n.2. (Pa. Super. 2013). We will therefore proceed to assess whether Appellant has raised a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

> A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

_____

[5] Rule 2119(f) requires "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shell set forth **in a separate section of the brief** a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence." Pa.R.A.P. 2119(f) (emphasis added).

- 11 -

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014).

Appellant argues that the imposition of consecutive sentences was manifestly unjust. Appellant's Brief at 9. Additionally, he argues that his sentence is manifestly excessive because the trial court did not weigh mitigating factors, such as the age of his prior convictions, instead focusing on the seriousness of the crimes. *Id.* at 10-11.

Generally, a trial court's exercise of discretion in imposing a sentence concurrently or consecutively does not raise a substantial question. *Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa. Super. 2015). However, "an excessiveness sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted). Therefore, we conclude that Appellant's challenge to the imposition of his consecutive sentences as manifestly unjust, together with his claim that the trial court failed to consider mitigating factors, present a substantial question, and we will address the merit of his claim.

We review a trial court's sentencing determination for an abuse of discretion:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

- 12 -

*Id.* at 132.

When imposing a sentence, a trial court is required to consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant," and state its reason for the sentence on the record. 42 Pa.C.S.A. § 9721(b); *Commonwealth v. Fowler*, 893 A.2d 758, 767 (Pa. Super. 2006). Where the court had the benefit of a presentence investigation ("PSI"), we can assume the court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). Additionally, a sentence within the standard guidelines range is appropriate under the sentencing code. *Moury*, 992 A.2d at 171.

In the present case, Appellant's sentence is within the standard guideline ranges. As the trial court had the benefit of a PSI when imposing the sentence, we presume that it considered all relevant information, including any mitigating factors. Despite this, Appellant argues that the trial court "did not adequately consider the mitigating factors as it relates to [Appellant's] prior record score, mainly that [Appellant's] prior convictions had been remote in time to the crimes charged, thereby representing mitigating factors." Appellant's Brief at 11. At sentencing, Appellant argued that the offenses which made him a RFEL are over 20 years old, and that "no other significant felony convictions" contributed to the prior record score; therefore, the age of

the convictions should be a mitigating factor. N.T. Sentencing, 12/4/23, at 9. Appellant's criminal record contradicts this argument.

While we agree that Appellant was either adjudicated delinquent or convicted of numerous felonies in 2001 and 2002, those are not his only felony convictions. He also has a 2016 PWID conviction (an ungraded felony); a 2020 person not to possess conviction (a felony of the first degree); a 2020 firearms not to be carried without a license conviction (a felony of the second degree); and a 2021 aggravated assault conviction (a felony of the second degree). Appellant's contention that these are not "significant felony convictions" is disingenuous.

Additionally, the trial court considered the fact that several of Appellant's prior convictions occurred more than 20 years ago in fashioning an appropriate sentence:

> The court has taken into consideration the facts of this case as they have become known to the court as a result of this trial in this matter. We have also taken into consideration the [PSI] Report, the age of [Appellant], and the criminal record of [Appellant], albeit that **we note . . . the more serious criminal offenses that [Appellant] has incurred occurred a substantial time ago**. . . . I'm also not taking into consideration any of the offenses with which [Appellant] is currently charged but has not been convicted.
>
> Now, that being said, it's important to note that these are serious offenses, such that jail being a dangerous place in and of itself, we can't introduce criminal enterprise into a jail. It's just not appropriate. So with that in mind, and taking into consideration [Appellant's] allocution, which we believe to be sincere, we, nevertheless, believe that a substantial sentence is appropriate here based on the nature of these offenses.

- 14 -

N.T., Sentencing 12/4/23, at 13-14.  Accordingly, Appellant's claim is refuted by the record, thus he is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/4/2024