J-S20026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA JOAQUIN LUCIANO | : | |
| | : | |
| Appellant | : | No. 890 MDA 2024 |

Appeal from the Judgment of Sentence Entered June 27, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0001766-2020

BEFORE:    OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                **FILED: JULY 14, 2025**

Joshua Joaquin Luciano ("Luciano") appeals from the judgment of sentence imposed following his jury convictions of murder of the first degree, attempted homicide,[1] and related offenses.  We affirm.

The trial court summarized the following factual history: in the early morning hours of March 19, 2020, East Lampeter Township Police officers "responded to a 'shots fired' call placed by an occupant of" a room at a motel. Trial Court Opinion, 10/31/24, at 2.  The victim, Alex Rivera ("Rivera"), suffered a gunshot to the head and died as a result.  Two women and a child were also inside the motel room.  The officers learned that a second victim,

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 901(a), 2501.

Stephen Waters ("Stephen"),[2] "was being treated at [the hospital] for a gunshot wound to the stomach." *Id*. at 3.

At the scene, an individual named Quadel Brown ("Brown") reported that he was present at the shooting and "had interacted with the suspected shooter just prior to the incident." *Id*. at 3. Brown identified the shooter as Luciano and stated Luciano was driving a blue Acura. As we discuss *infra*, Tyler Gonzalez-Inthiphan ("Gonzalez-Inthiphan"), who testified for the Commonwealth at trial, admitted that he and Luciano were in the car and both fired shots at the victims and others.

Meanwhile, the officers obtained a search warrant for Luciano's home and arrested him there. Officers recovered three firearms from the home, including a .380 caliber gun and .40 caliber gun. The officers also observed a blue Acura, "believed to be involved in the shooting, parked approximately a half block from [Luciano's] residence. [T]here were holes in the vehicle that appeared to be consistent with bullet holes." *Id*.

The Commonwealth charged Luciano with homicide, conspiracy to commit homicide, attempted homicide, gun charges, and a drug charge. This matter proceeded to a jury trial in December 2022.[3] The trial court aptly summarized the lengthy testimony as follows.

---

[2] As we discuss *infra*, Stephen's brother, Sidney Waters ("Sidney"), was also present at the shooting.

[3] A first jury trial, in November 2022, resulted in a hung jury.

Brown, who had identified Luciano as one of the shooters, testified to the following. He was "partying" in the motel room with his girlfriend, his daughter, and the victim Rivera. N.T., 12/13/22, at 153. Brown contacted Luciano, whom he had known for three to four months, to purchase marijuana. *See id*. at 151, 155. Brown and Rivera then met Luciano and another man, later identified as Gonzalez-Inthiphan, at a gas station and bought the marijuana. Luciano drove Brown and Rivera back to the motel, where brothers Sidney and Stephen Waters had arrived to join them. Sidney and Stephen complained about the quantity of the marijuana, and, at their direction, Brown called Luciano. Sidney and Stephen yelled at Luciano and demanded he come back to the motel, and Luciano agreed.

Brown further testified to the following. Shortly thereafter, Luciano called him and told him to come outside. Brown walked toward Luciano's vehicle, which was "near the rear of the parking lot with the headlights off, backed into a parking spot to face" the motel room. Trial Court Opinion, 10/31/24, at 6. Meanwhile, the Waters brothers also walked outside the motel room. Luciano started driving towards Brown, and Brown heard gunfire as the Acura passed the motel room, where the Waters brothers were standing. When the shooting stopped, Brown saw that Stephen had been shot. He also observed Rivera laying on the motel room floor, "with a bullet hole in his head." *Id*.

Gonzalez-Inthiphan testified as a Commonwealth witness and stated the following.[4] He and Luciano sold marijuana to Brown and Rivera on the night of the shooting. Thereafter, Brown called Luciano, telling him "to come back to the motel because the [marijuana] was short." *Id*. at 7.

> [O]n the way back to the motel, [Luciano] seemed nervous. [Gonzalez-Inthiphan] asked [Luciano] what they were going to do and [Luciano] said he was going to fight. When they [entered] the motel parking lot, [Luciano] turned off the headlights . . . and parked . . . at the back of the lot. [Luciano] then contacted . . . Brown and told him to come out of his room. . . . Brown initially came out of the room alone, [but] two or three additional individuals exited [the room] after him.
>
> [Gonzalez-Inthiphan] explained that [Luciano] "was like, fuck that, and then he was just like, yo, like shoot at them." [Luciano] told him to shoot, so [Gonzalez-Inthiphan] did.

*Id*. at 8 (paragraph break added and record citations omitted). Gonzalez-Inthiphan fired all eight bullets of his .380 caliber firearm towards the group, while Luciano fired a .40 caliber. He estimated that Luciano fired four times before his gun jammed.

The Commonwealth also presented the following forensic evidence. The bullet that struck Rivera was fired from a .40 caliber firearm. DNA samples taken from the Acura's steering wheel, as well as the grip and trigger of the .40 caliber gun, matched Luciano's DNA.

---

[4] The Commonwealth also charged Gonzalez-Inthiphan with, *inter alia*, criminal homicide. His case was pending at the time of Luciano's trial.

Additionally, the Commonwealth played a surveillance video, which showed the following. At 12:55 a.m., Brown and Rivera left the motel on foot and at 1:04 a.m., returned in Luciano's Acura. At 1:13 a.m., the

> Acura again enters the motel parking lot with its lights off and backs into a space near a dumpster at the rear of the lot. At [1:15 a.m.,] Brown can be seen exiting [the motel room], followed by two additional males . . . . The Acura begins driving toward [the motel room] and muzzle flashes can be seen coming from both sides of the vehicle . . . .

Trial Court Opinion, 10/31/24, at 11 (record citations omitted). Text messages between Luciano and Brown "matched precisely with the timeline that unfolded on the surveillance video." *Id.*

With respect to the second shooting victim, Stephen, the trial court summarized:

> Although the Commonwealth clearly acknowledged that [Stephen] did not cooperate with the investigation, the Commonwealth called Scott Keeny, [M.D. ("Dr. Keeny"),] a trauma surgeon[.] Doctor Keeny explained that he performed surgery on [Stephen] on March 19, 2020, to address a gunshot wound to . . . his abdomen. . . . Stephen . . . did meet with [an] East Lampeter Township Police Department [detective] on March 31, 2020, to retrieve some of his personal items[ and] sign[] a consent form for his medical records.

*Id*. at 10 (record citations omitted).

Luciano presented exhibits at trial, but did not testify in his own defense nor call witnesses. Pertinently, the trial court gave jury instructions on, *inter alia*, accomplice liability and the principle that the jury could infer a specific intent to kill from a defendant's use of a deadly weapon on a vital part of the victim's body. The court denied some of Luciano's requests for other

- 5 -

instructions. The court also instructed the jury on first degree murder and third degree murder.

The jury found Luciano guilty of the first degree murder of Rivera, as well as all other charges: conspiracy to commit the homicide of Rivera, the attempted homicide of Stephen,[5] aggravated assault, discharge of a firearm into an occupied structure, firearms not to be carried without a license, and possession with intent to deliver a controlled substance.[6] Separately, the trial court found Luciano guilty of persons not to possess a firearm.[7]

On April 25, 2023, the trial court initially imposed a sentence of life imprisonment without parole, with an aggregate consecutive term of thirty-six and one-half to sixty-seven years. However, following Luciano's timely post-sentence, the trial court imposed an amended sentence on June 27, 2023, of life imprisonment without parole and an aggregate consecutive term of twenty-eight and one-half to fifty-seven years' imprisonment. Luciano did not file another post-sentence motion, and ultimately filed a timely notice of

---

[5] *See* N.T., 12/15/22, at 506, 514, 515 (trial court's jury instruction on homicide, conspiracy to commit homicide, and attempted homicide).

[6] 18 Pa.C.S.A §§ 903(a), 2501(a), 901(a), 2702(a)(1), 2707.1(a), 6106(a)(1); 35. P.S. § 780-113(a)(30).

[7] 18 Pa.C.S.A. § 6105(a)(1).

appeal.[8]  Following the appointment of new counsel, Luciano filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Luciano presents four issues for our review:

[I].  Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to present sufficient evidence [ Luciano] possessed the requisite intent to kill necessary for first degree murder.

[II].  Whether the trial court erred in accepting the jury's verdict where the weight of the evidence favored third degree murder.

[III].  Whether the trial court erred in sentencing [Luciano] to a life sentence plus consecutive sentences, where such sentence was unduly harsh and against the fundamental norms underlying the sentencing process and sentencing guidelines.

IV.  Whether the trial court erred in failing to consider or discuss trial counsel's proposed jury instructions.

Luciano's Brief at 6.

_____

[8] Luciano initially filed a counseled notice of appeal, but this Court dismissed the appeal for failure to file a docketing statement.

Luciano then filed a timely *pro se* petition for relief under the Post Conviction Relief Act.  *See* 42 Pa.C.S.A. §§ 9541–9546.  On May 15, 2024, the trial court reinstated his direct appeal rights *nunc pro tunc*.  Luciano filed a *pro se* notice of appeal on June 24, 2024, which we note was after the thirty-day deadline.  ***See Commonwealth v. Maddrey***, 205 A.3d 323, 326 (Pa. Super. 2019) (stating that an appellant must file an appeal within thirty days of an order reinstating their appeal rights).  However, we decline to find the notice of appeal was untimely, as the trial docket does not state when the order was mailed to Luciano.  ***See Commonwealth v. Jerman***, 762 A.2d 366, 368 (Pa. Super. 2000) (holding that where "the docket entries disclose[] no indication that the clerk furnished a copy of the order to [the defendant,] we assume the period for taking an appeal was never triggered and the appeal is . . . timely").

In his first issue, Luciano challenges the sufficiency of the evidence to sustain his conviction for murder in the first degree. Specifically, he avers the Commonwealth failed to show a specific intent to kill. Our standard of review is well-settled:

> When reviewing a challenge to the sufficiency of the evidence, we "view the evidence in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the jury could have found every element of the crime beyond a reasonable doubt." "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." Additionally, this Court cannot "re-weigh the evidence and substitute our judgment for that of the fact-finder." This presents a pure question of law and, as such, our standard of review is *de novo*, and our scope of review is plenary.

*Commonwealth v. Santiago*, 294 A.3d 482, 484–85 (Pa. Super. 2023) (citations omitted).

"To convict a defendant of first degree murder, the Commonwealth must prove: a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011) (*citing* 18 Pa.C.S.A. § 2502(a)). "[T]he fact-finder 'may infer that the defendant had the specific intent to kill the victim based on the defendant's use of a deadly weapon upon a vital part of the victim's body.'" *Id*. at 1133-34 (citation omitted).

The Commonwealth may also establish specific intent via the doctrine of transferred intent; under this doctrine, "the intent to murder may be

transferred where the person actually killed is not the intended victim."
***Commonwealth v. Jones***, 912 A.2d 268, 279 (Pa. 2006) (*citing* 18 Pa.C.S.A.
§ 303(b)(1)); ***see also Commonwealth v. Gaynor***, 648 A.2d 295, 298 (Pa.
1994) (holding that when the "actual result . . . was that another person was
killed instead of the intended victim," the defendant's specific intent
transferred to the unintended victim).

On appeal, Luciano's sole sufficiency challenge is whether the
Commonwealth established that he specifically intended to kill Rivera.[9]
Luciano maintains that he "could not have even seen [Rivera] at the time of
the shooting," and the Commonwealth did not present any evidence that he
had a motive to kill, "or even had ill against," Rivera. Luciano's Brief at 16.
With respect to the Commonwealth's theory of transferred intent, Luciano
contends "the Commonwealth failed to establish [his] specific intent to kill
anyone on scene." ***Id***. at 17.

The trial court concluded the Commonwealth "presented overwhelming
evidence sufficient to show that [Luciano] acted with a specific intent to kill."
Trial Court Opinion, 10/31/24, at 14. The court reasoned:

> [O]n the way back to the motel, [Luciano] told [Gonzalez-
> Inthiphan] that he was returning to fight. He then pulled into the
> parking lot with his headlights off and laid in wait until . . . Brown
> and the Waters brothers left the room. [Luciano] communicated
> his intent to [Gonzalez-Inthiphan], explicitly stating that

_____

[9] Luciano does not identify Rivera by name, but refers to him as "the
decedent." Luciano's Brief at 16-17. As the other shooting victim in this
matter, Stephen, survived, "the decedent" can only mean Rivera.

[Gonzalez-Inthiphan] should shoot at them. Not in their general direction, but **at** them. The evidence showed that [Luciano] followed his own instruction by [also] firing shots at the Waters brothers and [at the motel room], one of which went through the window, struck . . . Rivera in the head, and killed him. Along with [Gonzalez-Inthiphan's] testimony regarding who had which gun, [Luciano's] DNA was found on the .40-caliber weapon — the weapon that discharged the type of bullet found where . . . Rivera had been laying and that was covered with his blood and hair.

Further, the doctrine of transferred intent thwarts any argument that the Commonwealth failed to sustain its burden because it did now show that [Luciano] intended to kill . . . Rivera specifically. Again, one of [Luciano's] bullets hit . . . Rivera in the head, making it abundantly clear that [Luciano] willfully and deliberately fired vital-organ-level-shots directly toward the individuals standing outside of an occupied hotel room. Assuming that the Waters brothers and, possibly, . . . Brown were the intended victims, [Luciano's] intent to kill transfers to the actual victim, . . . Rivera. For these reasons, [Luciano's] claim that his first-degree murder conviction was not supported by sufficient evidence must fail.

*Id*. at 14-15 (emphasis in original and unnecessary capitalization omitted).

Based on our review of the record, we agree that the Commonwealth presented sufficient evidence for the jury to determine, beyond a reasonable doubt, that Luciano acted with a specific intent to kill Rivera. **See Santiago**, 294 A.3d at 484–85. We reiterate that Gonzalez-Inthiphan testified: (1) on their way back to the motel, Luciano "said he was going to fight;" (2) Luciano commanded Gonzalez-Inthiphan to shoot at the group of men standing outside the motel room; and (3) as Luciano drove past the group, they both fired multiple shots at them. Trial Court Opinion, 10/31/24, at 8. Surveillance video showed that as the Acura began driving toward the motel room, "muzzle

- 10 -

flashes can be seen coming from **both** sides of the vehicle." **Id**. at 11 (emphasis added).

Luciano's short argument on appeal ignores three of the Commonwealth's theories at trial. First, the trial court instructed the jury that if it believed Luciano "intentionally used a deadly weapon on a vital part of the victim's body, [it could] infer that [Luciano] had the specific intent to kill." N.T., 12/15/22, at 507; **see also Houser**, 18 A.3d at 1133. Luciano fails to address the trial court's clear discussion "one of [Luciano's] bullets hit . . . Rivera in the head, making it abundantly clear that [Luciano] willfully and deliberately fired vital-organ-level-shots directly toward the individuals standing outside of an occupied hotel room." Trial Court Opinion, 10/31/24, at 14-15.

Second, Luciano does not address the Commonwealth's theory of accomplice liability. The trial court instructed the jury that: (1) "[a] person can be guilty of first-degree murder when he did not cause the death personally if the Commonwealth proves beyond a reasonable doubt that he was an accomplice in the murder;" and (2) "[t]o be an accomplice in a murder, the defendant must have intended that a first-degree murder occur" and the defendant solicited, commanded, encouraged, or requested another person to commit it, aid, agree to aid, or attempt to aid in planning or committing it. N.T., 12/15/22, at 507-08; **see also** 18 Pa.C.S.A. § 306(c); **Commonwealth v. Knox**, 105 A.3d 1194, 1196 (Pa. 2014) (stating "the general rule is that a

person is an accomplice of another in the commission of 'an offense' if, acting with the intent to promote or facilitate the commission of 'the offense,' he solicits the other person to commit it or aids, agrees, or attempts to aid the other person in planning or committing it"); ***Commonwealth v. Jordan***, 212 A.3d 91, 95 (Pa. Super. 2019) (explaining that "[a]ccomplice liability requires only aid, not an agreement," whereas "[t]he essence of a criminal conspiracy, which . . . distinguishes [it] from accomplice liability, is the agreement made between the co-conspirators").  Again, the jury was free to believe Gonzalez-Inthiphan's testimony that Luciano commanded him to "shoot at" the group of men, and in response, both he and Luciano fired multiple shots at them. Thus, the jury could have found sufficient evidence of Luciano's guilt based on accomplice liability.

Finally, Luciano ignores that the jury also found him guilty of conspiracy to commit the homicide of Rivera.  ***See*** N.T., 12/15/22, at 514 (trial court instructing the jury that "[t]he information alleges in this case that [Luciano] conspired with . . . Gonzalez-Inthiphan" and the overt acts were shooting and killing Rivera).  Even if the jury had found it was Gonzalez-Inthiphan who shot and killed Rivera, the conspiracy conviction rendered Luciano criminally liable for that act as well.  ***See Jordan***, 212 A.3d at 95 (stating "[c]onspiratorial liability is 'a theory in which one conspirator is criminally liable for the substantive offenses committed by other members of the conspiracy that are undertaken in furtherance of the conspiracy'").

The Commonwealth's evidence established Luciano's guilt under each of these theories. In the absence of any argument against any of them, we determine no relief is due on Luciano's challenge to the sufficiency of the evidence for his conviction of murder in the first degree. Accordingly, his first issue is meritless.

In his second issue, Luciano argues "[i]n the alternative" that "the guilty verdict went against the weight of the evidence." Luciano's Brief at 17. Luciano maintains that, "[a]t best, [he] fired into a crowd of people." *Id*. at 19. In support, he reiterates there was no evidence that he had a specific intent to kill, and instead, he acted recklessly. Thus, in Luciano's view, the weight of the evidence supported a verdict of homicide in the third degree. As stated above, the trial court instructed the jury on murder of the third degree, but it returned a verdict of guilty on murder of the first degree.

Upon review of the record, we determine Luciano has waived this issue for our review. Pennsylvania Rule of Criminal Procedure 607 requires a defendant to raise a challenge to the weight of the evidence before sentencing or in a post-sentence motion. *See* Pa.R.Crim.P. 607(A)(1-3). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." *Commonwealth v. McCall,* 911 A.2d 992, 997 (Pa. Super. 2006) (*citing* Pa.R.Crim.P. 607, *comment*).

Luciano did not challenge the weight of the evidence at his April 25, 2023 initial sentencing hearing, nor in his post-sentence motion following this hearing. He did not file any post-sentence motion after the June 27, 2023 amended sentencing. The certified record does not include the transcript of the amended sentencing hearing, and thus we cannot determine whether Luciano raised the weight issue then.[10] In any event, Luciano does not claim that he did. Indeed, Luciano fails to cite the place in the record where he preserved such an issue. *See* Pa.R.A.P. 2117(c)(1) (requiring an appellant to specify the place in the record where they raised an issue that is "not reviewable on appeal unless raised or preserved below").

Instead, our review of the record reveals that Luciano raised this issue for the first time in his Rule 1925(b) statement of errors complained of on appeal. Because Luciano failed to properly raise his weight claim before the trial court, he has waived it for our review. *See* Pa.R.Crim.P. 607(A)(1)-(3); *see also Commonwealth v. Jones*, 271 A.3d 452, 457 (Pa. Super. 2020) (stating that "[r]aising an issue for the first time in a Rule 1925(b) statement

_____

[10] We note that on July 25, 2024, Luciano filed a request for transcripts, listing only the transcripts for the December 15, 2022 final day of trial and April 25, 2023 initial sentencing hearing. We may find waiver on the basis that he failed to ensure the record included the June 27, 2023 amended sentencing hearing. *See Interest of G.E.W.*, 233 A.3d 893, 900 n.5 (Pa. Super. 2020) (noting "that the burden always remains on the Appellant to ensure that the record is complete on appeal" and holding that where there was "no indication that Appellant requested the transcripts for the . . . hearing and no transcript was included in the record before us[,] she waived appellate review of [the] claim").

[results in] waiver of an issue that the appellant failed to raise while the case was pending in the trial court"). Accordingly, no relief is due on Luciano's second issue.

In his third issue, Luciano challenges the discretionary aspects of his sentence. He claims the trial court abused its discretion in: imposing consecutive sentences to his mandatory sentence of life imprisonment without parole; and failing to consider his age of nineteen and *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny, which ruled that mandatory life without parole sentences for juveniles were unconstitutional. This Court has explained:

> "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right."

> Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[A.] § 9781(b).

*Commonwealth v. Akhmedov*, 216 A.3d 307, 328 (Pa. Super. 2019) (*en banc*) (some citations omitted). This Court has held that when a trial court has granted reconsideration of a sentence and imposed an amended judgment of sentence, a defendant's failure to file a new motion for reconsideration from

the amended sentence may result in waiver. *See Commonwealth v. Levy*, 83 A.3d 457, 467 (Pa. Super. 2013).

As stated above, the trial court initially imposed sentence on April 25, 2023, but following Luciano's timely post-sentence motion, granted reconsideration and imposed an amended judgment of sentence on June 27, 2023. However, Luciano did not file a new motion for reconsideration of this amended sentence. As stated above, Luciano did not request a transcript of the latter sentencing hearing, and thus we cannot determine whether he raised his present sentencing claims then. *See* n.10, *supra*. Similar to his weight of the evidence issue, Luciano does not now claim that he did preserve his sentencing claims at the hearing. Accordingly, we determine he has waived his discretionary aspects of sentencing issues for our review. *See Akhmedov*, 216 A.3d at 328; *see also Levy*, 83 A.3d at 467.

In his final issue, Luciano avers "[t]he trial court erred in failing to consider or discuss [his] proposed jury instructions." Luciano's Brief at 27. By way of background, we summarize that Luciano filed seven points of charge, three of which he now addresses on appeal. First, Luciano objected to the standard instruction that the jury may infer a specific intent to kill from the use of a deadly weapon on a vital part of the body. Second, Luciano requested a standard instruction on, in sum: "3.21 Failure to Call Potential Witness-Waters." Luciano's Points for Charge, 12/15/22, at 7. Third, Luciano

asked for an instruction on involuntary manslaughter. The trial court denied all three requests.[11]

We first consider the trial court's observation that Luciano's issue, as phrased in his Rule 1925(b) statement, "suggests that his argument is limited to a critique that [the court] did not in any way acknowledge . . . his proposed jury instructions. His claim, taken at face value, does not seek to litigate the validity of those instructions."[12] Trial Court Opinion, 10/31/24, at 20. The court deemed this argument "directly contradicted by the record" because the court acknowledged on the record that Luciano filed proposed charges and his counsel "discussed the instructions during an informal charging conference." *Id*. As to the merits, the trial court found no error.

We address each instruction separately. First, Luciano avers the trial court erred in: (1) denying his request to **not** instruct the jury that it may

_____

[11] Luciano took exception after the trial court completed the jury instructions, thereby preserving his jury instruction claims for our review. **See** N.T., 12/15/23, at 522; **see also** Pa.R.Crim.P. 647(B) (providing "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate").

[12] The issue in Luciano's Rule 1925(b) statement was:

> The trial court abused its discretion, erred, and infringed on . . . Luciano's constitutional rights including his right to Due Process of Law under the Constitution of the United States and under the Constitution of Pennsylvania in failing to consider nor discuss trial counsel's proposed jury instructions one . . . through seven . . . .

Statement of Matters Complained of on Appeal, 8/22/24, at 2.

infer the specific intent to kill from the intentional use of a deadly weapon on a vital part of the victim's body; and (2) denying his request for an instruction on involuntary manslaughter.[13]  Luciano's sole argument is, in sum: "The trial court did not discuss the instructions with counsel and did not give a reason on the record for the failure to give either instruction."  Luciano's Brief at 31.

We determine Luciano has waived this issue for our review for a lack of development and discussion of the relevant facts and legal authority.  **See** Pa.R.A.P. 2119(a) (requiring argument to include "the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"); **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) (stating this Court may find issues waived "when defects in a brief impede our ability to conduct meaningful appellate review," and "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant").  Luciano does not discuss the law implicated by either jury instruction, nor explain how they would have applied to the evidence presented at trial.  Luciano also fails to respond to the trial court's well-reasoned analysis supporting its rulings.  **See** Trial Court Opinion, 10/31/24, at 21 (opining that:

---

[13] This Court has explained: (1) a "voluntary manslaughter charge is appropriate only when that crime is made an issue in the case, and evidence would support such a verdict;" and (2) "[a] person who kills an individual without lawful justification commits voluntary manslaughter if . . . he is acting under a sudden and intense passion resulting from serious provocation by . . . the individual killed . . . or another whom the actor endeavors to kill, but . . . negligently or accidentally" kills).  **Commonwealth v. Patton**, 936 A.2d 1170, 1176 (Pa. Super. 2007).

- 18 -

(1) had it granted Luciano's request, to **not** give an instruction on the inference of the use of a deadly weapon on a vital part of the body, the court would not have "present[ed] an accurate statement of the law;" and (2) the involuntary manslaughter instruction was not applicable because the evidence did not support a finding of it).

Finally, Luciano asserts the trial court erred in not giving an instruction on a failure to call a potential witness, namely **Sidney**.[14] Luciano claims the Commonwealth knew of his location "because he was at the time being charged by [its] office," and **Sidney** "was an eyewitness . . . and would have undoubtedly have information material to the case." Luciano's Brief at 31-32.

We reiterate that Luciano's proposed point for charge merely cited "Waters" — without specifying which brother. **Stephen** suffered a gunshot, and the trial court's opinion addressed Luciano's issue with respect to Stephen only: "The Failure to Call Potential Witness instruction was not applicable

---

[14] This Court has explained:

> A missing witness instruction is appropriate where the "witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative[.]" Where the party does not present the witness, the jury may be instructed that it can infer that the testimony of the witness "would have been unfavorable."

*Commonwealth v. Crumbley*, 270 A.3d 1171, 1185 (Pa. Super. 2022) (citation omitted).

because Stephen . . . was available to either party and his testimony would have been cumulative."  Trial Court Opinion, 10/31/24, at 21.

We determine that Luciano has waived his claim, regarding Sidney, for failure to raise it before the trial court.  *See* Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").  His proposed point of charge cited only "Waters," without specifying which brother, and without explaining why either brother's anticipated testimony would have had "special information material to the issue," nor why Sidney was allegedly available only to the Commonwealth. *Crumbley*, 270 A.3d at 1185.  Indeed, the trial court presumed Luciano was referring to *Stephen*, and on appeal, Luciano does not address this discrepancy but instead baldly claims *Sidney* was the subject of an appropriate missing witness instruction.  Luciano's failure, on appeal, to discuss any of the requisites of a missing witness instruction, similarly waives his issue for our review.  *See* Pa.R.A.P. 2119(a).  For the foregoing reasons, no relief is due on Luciano's final issue.

As we determine none of Luciano's issues merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

P.J.E. Bender joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/14/2025